[File No. 7293]

ANNA HAYASHI and Harry T. Hayashi, Respondents, v. CLAIRE IHRINGER, Delores Ihringer, Leo Krenz and Polly Krenz, Appellants.

(58 NW2d 788)

Opinion filed May 28; 1953

*Sinness & Duffy,* for appellants.

*Rittgers, Hjellum & Weiss,* for appellants.

BURKE, J. In May 1948, plaintiffs and the defendants entered into an option contract. By the terms of this contract defend-

ants secured an option to purchase from the plaintiffs within the time limited therein, "blocks sixty-nine and seventy-six in the West Side Addition to the City of Carrington . . . together with all personal property of every kind, nature and description, now used in the buildings situated on the above described real estate, and used in connection with the business thereon operated as Rainbow Gardens and including all beds, bedding and furniture, in the tourist cabins, and all furniture, fixtures, kitchen utensils and equipment contained in the building operated as a restaurant and dance hall on said premises." The purchase price was fixed at forty-five thousand dollars, of which twenty-five thousand was payable upon the exercise of the option, and the balance at the rate of $500.00 per month with interest at five per cent per annum..

Defendants exercised this option. They received from the plaintiffs a deed to the real property and a bill of sale to the personal property therein described, and they executed and delivered to plaintiffs a mortgage upon the real property conveyed as security for the payment of the balance due according to the terms of the option contract. In July 1948, defendants took possession of the property and began the operation of the varied businesses thereon located. Thereafter payments of principal and interest were made each month in accordance with the terms of the contract until December 19, 1949.

Thereafter defendants made no further payments and early in March 1950, plaintiffs served upon defendants notice of intention to foreclose the mortgage. On March 17, 1950 defendants served upon the plaintiffs a notice of rescission of the purchase agreement. As set forth in this notice, the ground for rescission was the assertion that plaintiffs specifically agreed not to reenter the cafe business at Carrington, that they had violated this agreement and that by entering into active competition with the defendants, they had substantially destroyed the value of the property sold to the defendants.

This action to foreclose the purchase money mortgage was commenced on April 6, 1950. The complaint sets forth the execution of the mortgage and the defaults in payment. Defendants' answer admits the execution of the mortgage and the al-

leged defaults. As an affirmative defense it sets forth "That in consideration of the purchase of said property and as a part of the same transaction, the plaintiffs sold to the defendants the good will of the Rainbow Gardens, including the good will of the restaurant business and they agreed not to engage in the restaurant business at Carrington in competition with defendants; that within a few months after selling said property to defendants, the plaintiffs commenced to remodel their building at Carrington, converted the same into a restaurant and thereupon advertised their services to provide catering for banquets, parties and special events of the same character and nature as the specialty of the Rainbow Gardens; that they advertised that such services would be under the personal direction of the plaintiff, Harry T. Hayashi and that plaintiffs, have continued to operate such restaurant, specializing as aforesaid in direct competition with the business carried on by defendants; that the good will and agreement of plaintiffs not to engage in business in competition with defendants was of the value of not less than $15,000.00 and that defendants paid to plaintiffs $15,000.00 more than the tangible value of the aforesaid property in consideration of the transfer of the good will and the agreement by plaintiffs not to compete with defendants." In their prayer for relief defendants asked that plaintiffs be required to accept a return of the property conveyed and that they be required to repay the defendants the payments heretofore made, together with the reasonable value of the permanent improvements made by the defendants, and for such further relief as to the court shall appear just. The plaintiffs replied, denying that they had ever entered into any agreement not to compete with the defendants.

Upon the trial of the case, the trial court found that defendants' attempted rescission was not made within a reasonable time after discovery of the alleged breach of contract and therefore could not be allowed and that whether the defendants had a cause of action for damages against the plaintiffs for breach of contract was not before the court under the pleadings, and was therefore not decided. Defendants have appealed and have demanded a trial anew in this court.

There is one basic issue in this case and that is whether there is sufficient competent evidence in the record to establish a contract by which the plaintiffs agreed not to compete with the defendants in the restaurant business. If there is no such evidence the defense of the defendants fails and the judgment of the district court must be affirmed.

At the trial the defendants contended that the plaintiff, Harry Hayashi, had agreed orally, immediately before the option contract was signed, that he would not compete with them in the restaurant business in Carrington and that such agreement was one of the considerations which induced them to execute the option contract. All evidence relating to this alleged agreement was objected to by plaintiffs upon the ground that the written contract superseded all oral negotiations or stipulations which preceded or accompanied the execution of the instrument and that parol evidence of such negotiations was not admissible to vary the terms of the written contract. The trial court noted the objection, reserved his ruling thereon and permitted the defendants to testify as to all of the conversations they had with the plaintiffs concerning this matter. All of the evidence which defendants claim establishes the existence of the contract not to compete is therefore in the record. We have considered this evidence and have reached the conclusion that, if competent, it would still be insufficient to establish a contract not to compete.

The defendants all testified as to statements made by the plaintiffs, Harry Hayashi and Anna Hayashi. Claire Ihringer testified: "We were led to believe on account of ill health on the part of Mr. Hayashi, that he was unable to continue with the restaurant business."

Q. "You say you were led to believe—did they tell you that?"
A. "They told us that."
Q. "Was there any discussion during these negotiations with reference to him going into a competing line of business?
A. "Yes, there was."
Q. "Tell us what conversation you had with them regarding that."
A. "I can't recall exactly but I believe it was about May 18th.

We had agreed on the price and we were to take over and I asked him, Mr. Hayashi, if he was, going to start a restaurant. I mentioned the Miami Grill. He told me 'No', that if he wanted to continue in the restaurant business, he would keep the Rainbow Gardens."

Delores Ihringer's testimony is as follows:

Q. "Did you hear any specific statement by him with reference to his going into the restaurant business or not going into the restaurant business?"

A. "He definitely did not want to go into the restaurant business. He had been in so long he was tired and he wanted to get out, and his health would not permit."

Q. "Did you hear the conversation that your husband had? Something about he asked him if he might be going back in the restaurant business after selling Rainbow Gardens?"

A. "Yes."

Q. "Tell us what took place."

A. "He laughed and said, it would be silly for me to go into another restaurant, or I would keep the Rainbow Gardens. I am too sick to carry on and stand on my feet all those long hours."

On cross examination she was asked:

Q. "You never pinned him down to a promise?"

A. "We didn't think it was necessary. If it was between a party we didn't know, or a stranger, someone who was not a relative, we would have hired a lawyer and had it legalized but it was strictly family . . . and we placed too much trust."

Defendant, Leo Krenz's testimony concerning the conversation with Harry Hayashi is as follows:

"We had discussed the price. There was a discussion of Five Thousand Dollars. We wanted to get the price down Five Thousand Dollars. We discussed it forth and back and finally we came to the conclusion of the price. He wanted Forty-five Thousand Dollars. Then I say, 'If we pay him that price that he would retire from that business in this town—that he would not start that business in this town.' He said, 'that is the reason I am selling out because I want to retire.' "

The testimony of Claire and Delores Ihringer evidently re-

lates to one conversation and that of Leo Krenz to another. The Ihringers testified to a question put by Claire Ihringer and Hayashi's answer. Krenz testified to a question put by himself and Hayashi's answer. The question put by Ihringer, after they had agreed on the price and were ready to take over, was simply whether Mr. Hayashi planned to go into the restaurant business. Mr. Hayashi's answer was that if he wanted to continue in the restaurant business he would keep the Rainbow Gardens. Delores Ihringer corroborated this testimony and added that Hayashi gave as his reason for not wanting to start another restaurant, "I am too sick to carry on and stand on my feet all those long hours." We do not see how an agreement not to compete in the restaurant business can be spelled out of this conversation. Mr. Ihringer asked Mr. Hayashi what his intentions with respect to the restaurant business were at that time and Hayashi replied that he did not intend to go into that business. There was no request that Hayashi agree not to go into the business and no promise by Hayashi that he would for all future time stay out of that business in Carrington.

A mere statement of an intention to act in a certain way is not a promise upon which a contract can be predicated. 17 CJS (Contracts Sec 46) 388; In re McKeon's Estate, 227 Ia 1050, 289 NW 915; Van Camp v. Van Camp, 291 Mich 688, 289 NW 297; In re Sickmann's Estate, 207 Minn 65, 289 NW 832; Broad St. Nat. Bank v. Collier, 112 NJ Law 41, 169 A 552, affirmed 113 NJ Law 303, 174 A 900.

In Carlson v. Krantz, 172 Minn 242, 246, 247, 214 NW 928, 929, 930, 54 ALR 545, the court said:

". . . in such a case, it is easy for an interested party, in retrospect, to give a mere expression of intention a promissory and contractual effect. . . . Care should be taken not to attach promissory and contractual effect to what was at the time merely an expression of intention concerning future action."

Mr. Hayashi's answer to Mr. Krenz's question, viz: "That is the reason I am selling out, because I want to retire." is also but an expression of intention or desire on his part. Furthermore, it is clear that neither Krenz's question nor Hayashi's answer related to the restaurant business, but to the businesses

for which the defendants agreed to pay forty-five thousand dollars which included a tourist court, a filling station, a dance hall and a restaurant.

It was also contended by defendants that, if the evidence was insufficient to establish an express contract, a contract not to compete would be implied from the sale of a business and its good will. This contention is subject to several infirmities. In the first place the good will of the business was not expressly sold. In the second place the competition complained of related to only one phase of a multiple business enterprise. Lastly, the clear import of Section 9-0806 NDRC 1943 which provides:

"One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city or village, or a part of either, so long as the buyer or any person deriving title to the goodwill from him carries on a like business therein;" is that a sale of good will does not imply a contract not to compete but that such a contract may be expressly agreed to in cases where good will is sold.

We are of the opinion therefore that defendants' evidence, as a matter of law, is insufficient to establish the alleged contract not to compete. The judgment of the district court is therefore affirmed.

MORRIS, C. J., and SATHRE, CHRISTIANSON and GRIMSON, JJ., concur.