FORD MOTOR COMPANY v. GEORGE W. TAYLOR.

GEORGE W. TAYLOR v. VERNON PASSONS and JIMMY PASSONS d/b/a PASSONS FORD TRACTOR COMPANY.—446 S.W. 2d 521.

Middle Section. January 14, 1969.

Certiorari Denied by Supreme Court October 6, 1969.

Frank Davenport, McMinnville, for Ford Motor Co.

R. E. Bonner, Jr., McMinnville, for George W. Taylor.

Haston & Haston, McMinnville, for Vernon and Jimmy Passons.

TODD, J. Plaintiff, George W. Taylor, sued defendants, Ford Motor Company and Passons Motor Company for damages resulting from alleged defects in a tractor manufactured by Ford and sold to plaintiff by Passons. The trial judge, sitting without a jury, awarded plaintiff judgment for $7,600.00 against Ford and dismissed plaintiff's suit against Passons. Ford has appealed in error from the judgment against it, and plaintiff has appealed in error from dismissal of his suit against Passons.

As amended, plaintiff's declaration charged that he purchased from Passons a tractor manufactured by Ford; that the tractor was warranted to be of merchantable quality, to be free of latent defects, and to be suitable for the work for which it was designed and sold; that plaintiff relied upon the advertising of Ford and was induced thereby to purchase the tractor; that defendants were advised and knew the purpose for which the tractor was purchased, general farming; that the tractor was not as warranted, was grossly and irreparably defective, failed to function properly, and would not do the work for which it was designed and sold; and that plaintiff's injuries consisted of $3,666.00 difference

between the price paid and actual value of the tractor and special consequential damages of $5,500.00, a total of $9,166.00.

The plea of Ford denied all of the material allegations of the declaration and affirmatively relied upon the actions of Passons Motor Company in fulfilling all of the obligations of a warranty made to plaintiff by Passons.

The plea of Passons Motor Company admitted that it sold the tractor to plaintiff; that it was manufactured by Ford; that Ford warranted the tractor to Passons; and that Passons furnished plaintiff with a written warranty on the form furnished by Ford Motor Company. Passons' plea denied any representations or warranties other than said written Ford warranty, but admitted that Passons knew that the tractor was to be used for general farming, for which purpose it was recommended by Ford. Passons' plea denied the defective quality of the tractor, but admitted that plaintiff had made complaints which, it was averred, had been answered and satisfied as provided in the written warranty. Other material allegations of the declaration were denied.

After hearing the evidence, the trial judge filed a memorandum opinion which contained the following:

"The greater weight of the evidence is very convincing that the manufacturer of the tractor in question should be liable to the plaintiff and the dealer should be exonerated."

\* \* \* \* \*

"The record in this case is replete with testimony of defects, breakdowns and mechanical failures."

A judgment was entered accordingly from which Ford and plaintiff have appealed and assigned errors.

■ Ford's first assignment of error complains of the failure to sustain its motion in arrest of judgment based upon an incorrect recital in the teste of the original summons.

The original summons was issued on September 15, 1966, which was during the May, 1966 term, but was tested "Tuesday after the first Monday in September" (the first day of September term) instead of "Tuesday after the first Monday in May" (the first day of the May term).

After due service of process and pleas in bar by both defendants, the case was tried on December 27 and 28, 1967, and taken under advisement. On March 29, 1968, the trial judge filed his memorandum opinion announcing his decision. On April 4, 1968 plaintiff filed a motion to correct the teste of the summons to show the first day of the May term. On April 5, 1968, defendant Ford moved in arrest of judgment because of the erroneous teste of the summons. The trial judge sustained the motion to amend and overruled the motion in arrest.

Article VI, Section 12 of the Constitution of Tennessee provides as follows:

"*Requisites of writs and process.*—All writs and other process shall run in the name of the State of Tennessee and bear test and be signed by the respective clerks. Indictments shall conclude, 'against the peace and dignity of the State.' "

It is the contention of Ford that the erroneous reference to the first day of September term instead of the May term is such a fatal defect in the teste as to preclude correction by amendment.

Cases are cited in Ford's brief, and annotated under the foregoing section of the Constitution, wherein it has been held that processes not issued in the name of the state or not signed by the clerk are void and not amendable. No case is cited by Ford or annotated under the foregoing section of the Constitution to the effect that an erroneous date in teste renders the process fatally defective.

Section 20-213 T.C.A. provides as follows:

"*Teste of process.*—All process issued from any of the circuit courts and returnable thereto, shall be tested of the term next preceding the issuance."

In respect to this section, the venerable Judge Caruthers comments:

"This destroys the idea that the teste is the date of issuance or suing out." History of a Lawsuit, Eighth Edition, Sec. 51, p. 60.

Annotated under the foregoing code section is the case of McBee v. Petty, 43 Tenn. 178 (1866), the opinion of which contains the following:

" * * * The order of the Court, at the October Term, 1864, permitted the defendant to amend his summons, so as to entitle it of the 2d Monday of June, 1863, returnable to 2d Monday of October, 1863. * * * The Court, upon the service of process upon the plaintiffs in error, acquired jurisdiction of the person, and, by the Statute of amendment and jeofails, was authorized to make formal or material amendments. * * *" 43 Tenn. at p. 180.

The McBee opinion has been cited but has not been overruled by any reported case.

Secs. 20-1501 and 20-1504 T.C.A. provide as follows:

"*20-1501. Defects not ground for abatement.*—No summons, writ, pleading, process, return, or other proceeding in any civil action in any court, shall be abated or quashed for any defect, omission, or imperfection."

"*20-1504. Disregard or correction of formal defects.* Immaterial variances, errors, omissions, or defects, in all these cases, may be disregarded, or the court may direct an amendment without costs. The court may allow material amendments at any stage of the proceedings, upon such terms, and subject to such rules, as it may prescribe."

Upon the authority of the foregoing code sections, in the case of Clifton v. American Ins. Co., 167 Tenn. 579, 72 S.W. 2d 769 (1934), the Supreme Court held that a summons directed to the Insurance Commissioner, rather than to the sheriff as required by statute, was not fatally defective and was amendable. The Court said:

"The Constitution, however, contains no provision as to the address which a subpoena shall bear, and the language of the statute above quoted can scarcely be treated as mandatory." 167 Tenn. at 583, 72 S.W.2d at 770.

It is not amiss to paraphrase the foregoing language by stating, "the Constitution, however, contains no provision requiring the summons to be tested as of the first day of the term and the language of the statute above quoted can scarcely be treated as mandatory."

The summons in the present case bore correct notations of the date of filing and date of issuance. The error as to "teste date," involving a ceremonial reference to

the beginning of the term nearly four months previous, is not shown to have prejudiced the rights or defenses of the defendant in any way. As suggested in History of a Lawsuit, supra, the requirement as to the form of the teste is:

"clinging to the forms of ancient days, though much of the reason and substance be gone."

The circuit judge acted entirely within his discretionary powers in allowing the correction by amendment to comply with the "forms of ancient days."

Ford's first assignment of error is respectfully overruled.

Ford's second assignment of error is as follows:

"The trial court erred in ruling and adjudging that the dealer, Vernon Passons and son, Jimmy Passons, did not fully comply with the dealer warranty which issued to the defendant in error, George Taylor, that 'each part of this Ford tractor to be free, under normal use and service, from defects and material and workmanship for a period of six months from the date of sale to the original retail purchaser,' which warranty was expressly in lieu of any other express or implied warranty including any implied warranty or any other obligation on the part of the dealer. This warranty was relied upon as Exhibit B to the declaration. (T. Record Pages 1-6 and Exhibit 16, in bill of exceptions).

"By rendering judgement against the plaintiff in error, this prejudiced the defendant in error, in failing to hold and adjudge that Ford Motor Company

had complied with its warranty to the dealer. (T. Record, pages 30, 31, 32, 33)."

The trial judge did not rule that the dealer (Passons) "did not fully comply with the dealer warranty * * *". Such a ruling would have produced a judgment against Passons, which was not so rendered. Passons was dismissed. Plaintiff did not rely upon any written warranty by Passons. Such reliance was eliminated from the declaration by amendment.

The trial judge did not find that Ford had failed to comply with its warranty to its dealer, Passons. Even if such a finding were made, it would have been immaterial to the liability of Ford to plaintiff.

The alleged findings complained of in this assignment were immaterial to the determination and disposition of the cause in the trial court.

The disposition of the cause in this Court will rest on other grounds.

Ford's second assignment of error is respectfully overruled.

■ Ford's third assignment of error correctly contends that no implied warranty ran from Ford to plaintiff because there was no privity of contract. Olney v. Beaman Bottling Co., 220 Tenn. 459, 418 S.W.2d 430 (1967); Kyker v. General Motors, 214 Tenn. 521, 381 S.W.2d 884 (1964); Leach v. Wiles, 58 Tenn.App., 286, 429 S.W.2d 823 (1968); Oliver Corporation v. Green, 54 Tenn.App. 647, 393 S.W.2d 625 (1965). The liability of Ford rests not upon express or implied warranty, but upon tortious misrepresentation. The judgment of the

trial court and of this Court against Ford must rest upon tortious misrepresentation.

Ford's third assignment cannot avail against a judgment for tortious misrepresentation, and is therefore respectfully overruled.

■ Fords fourth assignment of error is as follows:

"The trial judge erred in ruling adversely to the plaintiff in error upon the declaration and suit as based upon tortious misrepresentation by plaintiff in error, Ford Motor Company, based upon the advertising, publicity by way of magazine advertisers and other form of publicity, and thus rendering judgment in favor of the defendant in error, George Taylor, and against the plaintiff in error, Ford Motor Company. This judgement was erroneous because the plaintiff in error was not guilty of any alleged misrepresentation on which said judgement could be rendered."

■ It is insisted that no competent proof was offered that Ford made any misrepresentations which were relied upon by plaintiff. Ford insists that Exhibits 1 and 2 are inadmissible because they are advertisements which appeared subsequent to the purchase. Plaintiff testified that Exhibits 1 and 2 were representative of the type of Ford advertisements which plaintiff read or had read to him prior to purchasing the tractor in question. The exhibits were therefore admissible for the purpose for which offered; i. e., to illustrate the type of advertisements upon which plaintiff relied.

Exhibits 3 and 4 are advertisements in magazines published before the purchase. Exhibits 5 and 6 are brochures describing the model 6000 tractor. Plaintiff testi-

fied that he obtained and studied other literature about Ford tractors which was not offered in evidence but which also influenced him in his choice of a Ford tractor.

Ford insists that none of the advertisements contains material and specific representations and that all are mere "sales talk". If the complaint of plaintiff were based upon a specific defect or deficiency in performance, then a specific misrepresentation might be required to sustain plaintiff's action against Ford. In the present case, however, plaintiff claims and the evidence shows that the tractor was inadequate in so many respects as to be generally deficient and contrary to the general representations of suitability and dependability contained in the advertisements of Ford.

Ford relies upon the case of Ford Motor Co. v. Lonon, 217 Tenn. 400, 398 S.W.2d 240 (1966). The published opinion in that case does not set out the exact nature of representations made, however the opinion does state:

"The brochure included material about the tractor he purchased, in February 1962, a large Fordson Major Diesel. It contained information about the live power take-off on this tractor, the power steering lift, full specifications, and 'just all about the tractor' ".

In the present case, the exhibits, referring to Ford tractors in general, and the model 6000 tractor in particular, use such expressions as:

"* * * inconvenience and lost tractor time. No more! We have a better idea."

"Put a good day behind you—every evening. * * * Even longer intervals between normal servicing help you put in more productive time. Everything about a

Ford tractor is designed for the man who wants to make the most of his time.''

''Notice the new strength, new toughness in these burly, easy handling tractors. They've got the added weight and ruggedness you need for today's farming.''

''the new Commander 6000. Today's most advanced 5 plow tractor * * *''

''Designed from the start as diesels for farm use, they deliver outstanding performance with remarkable economy.''

''Ford Commander 6000 * * * For 5 plow big acreage farming * * *''

''Where hours count, new Ford power lugs and goes''.

The undeniable burden and substance of Ford's advertising material was to the effect that Ford tractors are powerful, dependable, and free from excessive breakdown and repairs. The uncontroverted evidence shows that the tractor in question did not measure up to expectations created by Ford advertising.

Immediately after being purchased, the tractor began to malfunction. At first the safety cut-off on the ignition switch was so defective that the tractor could not be started except by ''shorting'' across the switch with a screw driver, which is shown to entail some danger. This trouble interfered with the use of the tractor a few days before it was corrected.

After performing satisfactorily one afternoon, on the following day the tractor ''just wouldn't pull''. Although represented to be a ''5 plow tractor'', it would not pull 4 plows. Two days later Passons took the tractor to his

shop where he kept it two or three days. Upon its return to plaintiff, the tractor still "wouldn't pull". Again Passons came and got the tractor, kept it overnight and returned it to plaintiff. Plaintiff then undertook to "turn" or "break" his corn land but the tractor "locked up" after turning only 26 acres. The 26 acres was subsequently planted, cultivated and harvested with other equipment.

The tractor "locked up" about May 3rd, at which time its "hour counter" showed 78 hours use. It was again taken to the Passons shop where the "rear end" or differential was disassembled and eleven parts were replaced. This repair consumed between one and two weeks. When the tractor was delivered to plaintiff, an employee of Passons undertook to demonstrate its operation with a disk attachment. The disk was damaged, something went wrong with the pump and power steering, and the tractor could not be used. Three or four days later, when the tractor was taken to Passons shop for repairs, the "hour counter" showed 79 hours.

The tractor was returned to plaintiff on June 30, but the "rear end" continued to "lock up". Passons would come and get the tractor and "work on it a little while". Finally it was found that a "Carter" (cotter) pin was improperly located in the locking mechanism of the left rear brake, preventing its release. The removal of the cotter pin corrected the "lock up" trouble. This was in July.

When use of the tractor was resumed, the power steering "kept going bad" and "you could hardly steer it". Passons furnished a considerable quantity of oil without charge in an effort to keep the tractor running. Pas-

sons borrowed the tractor to demonstrate it to another farmer, but it stopped in the field and had to be pulled out by another tractor. It was taken to the Passons shop for repairs. On September 7, the tractor was again in the Passons shop for pump and rear end repairs, at which time the "hour counter" showed 250 hours of operation. In normal use, a tractor of this type would normally be operated 2000 hours from March to September.

All of the repairs were performed by Passons or Ford employees without cost to plaintiff. Passons loaned plaintiff smaller tractors on various occasions, but they would do only part of plaintiff's work because they were smaller and plaintiff's attachments would not fit them. No 6000 Ford tractor was available in the vicinity for loan, rent, or sale during the planting, growing and harvesting season.

None of plaintiff's complaints are seriously controverted by defendants. Passons admits that the tractor was "not in keeping with Ford advertisements", or with other Ford tractors, that it was "defective in some respects", and that it was repeatedly in his shop for repairs. He further admitted that the tractor was guaranteed to do the work for which it was sold.

The evidence of defendant Ford confirms a large part of plaintiff's complaints and the participation of Ford employees in the efforts to produce satisfactory operation of the tractor. There is no real contradiction of the reality of the complaints of plaintiff. There is some evidence of some errors of operation or maintenance by plaintiff, all of which are denied by plaintiff.

■ The purchaser of machinery is not entitled to receive perfect performance in the absence of an absolute guarantee to this effect. Minor defects in reasonable quantity are to be expected. Where, as in the present case, the defects are so numerous and serious as to practically deprive the owner of any beneficial use, then general representations of quality and usefulness are thereby rendered false in respect to the particular machine.

The preponderance of the evidence shows that the tractor sold to plaintiff was so grossly deficient in measuring up to the representations of Ford as to render Ford liable for tortious misrepresentation in respect to the tractor in question.

The fourth assignment of error is respectfully overruled.

Ford's fifth assignment of error is as follows:

"The trial court erred in awarding and fixing the amount of damages it allowed to defendant in error which was in the amount of seven thousand six hundred sixty-six no/100 ($7,666.00) Dollars, (T. Rec. pages 31-32)."

The previously quoted memo of the trial judge indicates that damages were allowed on two grounds; namely (1) difference in cost and actual value and (2) consequential losses.

On the subject of the value of the tractor, only two witnesses testified, plaintiff and Mr. Passons.

Plaintiff testified that the tractor was worth only $1700.00 at the time he purchased it for $5,366.00.

■ Ford concedes that ordinarily the owner should be allowed to testify as to the value of his own property. Ford insists, however, that the owner must show some knowledge upon which his opinion was formed. No authority is cited in support of this insistence. The owner of property derives his authority to evaluate his own property from his intimate knowledge of its peculiarities, even if this knowledge must be supplemented by hearsay information about sales prices and offers to buy or sell other similar property. Plaintiff testified in great detail as to the condition and performance of the tractor, and further indicated that he had obtained "trade-in" offers from tractor dealers.

■ Ford's complaint goes to the weight rather than the competency of plaintiff's testimony on value.

Mr. Passons testified that the tractor was worth exactly what plaintiff paid for it. Such testimony is subject to serious question, because the same witness admitted that the tractor was not up to the standard of other Ford tractors. Thus, if the trial judge rejected Passons' testimony of value, as he evidently did, plaintiff's testimony was all that remained on the subject.

The testimony of plaintiff regarding the value of the tractor leaves considerable to be desired. Plaintiff's estimate of value was extracted from him only by prolonged and insistent questioning by his counsel. Plaintiff at first testified that the tractor was entirely without value. Upon urgent questioning and being reminded that he had received a "bid" for the tractor, plaintiff adopted the "bid" as his estimate of value.

It must be remembered that the plaintiff did not tender the return of the tractor and sue for refund of the

purchase price. He kept the tractor and sued for the difference between the amount paid and the actual value at the time of purchase. In this light, the plaintiff undertook to testify as to the value of the tractor at the moment of purchase, which is somewhat different from the testimony of the usual owner.

The measure of the actual value of the tractor at the time of its purchase was and is the price which would have been agreed upon by a seller and buyer, each willing but not under any necessity to deal and each having full knowledge of the deficiencies of the tractor, as subsequently revealed. Such an evaluation involves an unrealistic hypothetical state of facts, but is the correct theoretical basis for evaluation.

Having full fore-knowledge of the troubles which would ensue, any reasonable dealer would drastically discount such a tractor to sell it and avoid the expensive consequences of its deficiencies. Having such knowledge, no reasonable customer would offer or pay full price for such a tractor. If, however, the customer was assured that all complaints would be corrected without cost to him (as they were in this case) and that he would be compensated for consequential losses (such as he claims and is being allowed in this case) the reduction or depreciation in agreed value would not be as severe as otherwise.

The testimony of plaintiff is subject to the strong suggestion that his rather severe depreciation of a brand new tractor from its list price of $5,366.00 to $1,700.00 was in large part due to his subsequent losses for which he seeks compensation independently of and in addition to the difference between cost and actual value of the

tractor. His testimony is subject to the inquiry as to whether his estimate of value would have been different if he had been assured of recovery of consequent damages as well as damages for difference in cost and value, or more correctly, difference between actual value with defects and the value it would have had without defects.

 Neither the trial court nor this Court is bound by the specific monetary value placed upon the tractor by the plaintiff. In the case of Stevens v. Moore, 24 Tenn. App. 61, 139 S.W.2d 710 (1940) plaintiff sued for damages to a rug and testified that its value was $50.00 and that it had been rendered worthless. Defendant's evidence denied any damage to the rug whatsoever. The trial judge instructed the jury that they must find for the plaintiff for $50.00 or nothing. The Court of Appeals held the instruction erroneous, reversed and said:

"[14] But the rug was introduced in evidence and inspected by the jury, and the jury had the right to exercise their common sense and common knowledge and experience in determining the value of the rug and whether or not it is now worthless.

[15] 'Usually, testimony of a party or other interested witness as to the value of property involved or the amount of the damage is not conclusive, though not contradicted.' 15 Am.Juris., page 801, sec. 361; Annotation, 72 A.L.R., page 55." 24 Tenn.App. at p. 75, 139 S.W.2d at p. 719.

In the present case the trial court and this Court have the power and duty to honestly estimate the fair compensation due plaintiff without being bound to accept the exact amount proposed in the testimony of any particular witness. The amount of difference in value testified

to by plaintiff ($5,366.00 minus, $1,700.00 equals $3,-666.00) is deemed excessive. Some lesser amount would be more in accord with the evidence in the record.

■ The other element of damage consists of consequential losses occurring because plaintiff was unreasonably deprived of the use of the tractor. Such damages are allowable under proper circumstances. T.C.A. sec. 47-2-715; Chisholm & Moore Mfg.·Co. v. United States Canopy Co. 111 Tenn. 202, 77 S.W. 1062 (1903); Morristown Lincoln Mercury, Inc. v. Roy N. Lotspeich Publishing Co., 42 Tenn.App. 92, 298 S.W.2d 788 (1956); Memphis Casting Works v. Bearings and Transmission Co., 35 Tenn.App. 164, 243 S.W.2d 145 (1951); Black v. Love and Amos Coal Co., 30 Tenn.App. 377, 206 S.W.2d 432 (1947); 25 C.J.S. Damages sec. 76, p. 863. However, care should be exercised to avoid double recoveries by allowing the same damage twice under different designations. 25A C.J.S. Damages sec. 181, p. 203 ff.

■ In support of his claim for consequential damages, plaintiff testified that he owned and leased 105 or 110 acres of corn land which he had intended to plant in corn, but was unable to do so because of the failure of the tractor and inability to obtain a replacement; that he had already purchased seed and fertilizer for his entire acreage and had to sell same when he was unable to use it on his own land; that, considering the corn market, the reasonable, productivity of the land and the costs of planting, cultivating and harvesting, his reasonable expectation of net return from the corn crop he did not raise was approximately $300.00 per acre; and that he paid out relatively minor amounts to others for cultivating and harvesting the 26 acres he did plant.

Ford insists that the testimony of plaintiff is too speculative to support a verdict for damages. Plaintiff supported his estimate with factual information from his own experience and that of others. Testimony about prospective profits must to some degree be the result of estimation, but where, as in this case, it is supported by factual information and uncontradicted, it is sufficient to justify a recovery.

■■■ Ford complains that all elements of profit and loss were not taken into consideration in plaintiff's estimates. This complaint goes to the weight and not the admissibility of the evidence. The finder of fact is under a duty to make its own estimate of the actual damages sustained rather than to mechanically accept the estimate of a particular witness.

■■■ The consequential damages estimated by plaintiff are subject to revision downward by the circumstances. For example, plaintiff's damages include compensation for his own labors which were not required because of the defective tractor and which might well have been profitably employed otherwise.

Under Sec. 27-303 T.C.A., in a non-jury case, all issues of fact, including the assessment of damages are before this Court de novo. This Court has determined from the entire record that the sum of $4,500.00 would be adequate compensation to the plaintiff for the damages sustained. This recovery, coupled with the fact that plaintiff had no expense of repairs during his first year of ownership and the fact that plaintiff retains possession of and ownership of the tractor, should reasonably preclude any injustice to plaintiff.

Plaintiff insists that the tractor will continue to give trouble. If this should be true, the amount of recovery is sufficient to compensate for a measure of trouble hereafter.

In response to Ford's fifth assessment, plaintiff will be allowed damages of $4,500.00 rather than the amount allowed by the trial judge.

Otherwise, Ford's fifth and last assignment is respectfully overruled.

The plaintiff's sole assignment of error is that the trial court erred in dismissing the suit of plaintiff against the defendants, Vernon Passons and Jimmy Passons d/b/a Passons Ford Tractor Company.

The assignment is based upon T.C.A. secs. 47-2-314, 47-2-315 as follows:

"47-2-314. *Implied warranty — Merchantability — Usage of trade*—(1) unless excluded or modified (sec. 47-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as * * *

(c) are fit for the ordinary purposes for which such goods are used; and * * *

* * * * * *

"47-2-315. *Implied warranty—Fitness for particular purpose.*—Where the seller at the time of contract-

ing has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose. [Acts 1963, ch. 18, sec. 1 (2-315).]''

Section 47-2-315 does not apply to the present case for the reason that the preponderance of the evidence shows that plaintiffs relied principally upon the reputation and advertisements of Ford and did not particularly rely upon any judgment of Passons who had recently entered the tractor business and had no special skill or knowledge about tractors. The statute is also inapplicable because the evidence shows that the purposes for which the tractor was purchased were general and not particular. Kohn v. Ball, 36 Tenn.App. 281, 254 S.W.2d 755 (1952).

 At the time of the Kohn v. Ball transaction the statute on implied warranty of merchantability read as follows:

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality." 1932 Code Sec. 7208(2)

It will be observed that the former statute allowed an implied warranty of merchantability only when the goods were "bought by description". This limitation was omitted from the Uniform Commercial Code (Sec. 47-2-314) now in effect. Under the present law there is a statutory implied warranty of merchantability unless excluded or modified by the agreement of the parties.

It is insisted that the standard Ford warranty, delivered to plaintiff several days after the sale, excludes or modifies the statutory warranty. The preponderance of the evidence does not support such an insistence. The delivery of the written warranty subsequent to the sale is not sufficient to erase the statutory obligation which was created by the sale. There is no satisfactory showing that plaintiff ever accepted the written warranty as a substitute or an amendment of his original rights.

The word "merchantable" is defined by the foregoing statute as follows:

"* * * fit for the ordinary purposes for which such goods are used; * * *"

From the foregoing, it follows that a finding that the tractor in question was so deficient as to falsify representations of general fitness would require a corresponding finding that it was not of merchantable quality. Defendant, Passons, admitted in his testimony that the tractor did not measure up to the general standard of Ford tractors. The brief on behalf of Passons contains the following candid observation:

"It is obvious under the record in this case that the tractor purchased by the plaintiff was in fact a "lemon" and for the reasons set out in the memorandum of the Court, it was unsuitable for the use for which it was purchased."

Under applicable law and the record in this case, consistency requires that the dealer, Passons, be held liable for breach of statutory warranty of merchantability while Ford is held liable for tortious misrepresentation.

Passons pleads that he did all he could to satisfy plaintiff and that his liability should extend no further. The evidence does show that Passons exerted commendable efforts and incurred considerable expense in his efforts to correct the defects in the tractor. His actions in this regard, however commendable and however consistent with his written warranty, cannot relieve him of the unconditional obligation imposed by statute.

Since Ford was clearly shown to be the origin of the defects, Ford should ultimately bear the expense of compensating plaintiff. This fact does not alter the rights of plaintiff against Passons under the statute, and, if Passons, rather than Ford, should be called upon to pay the judgment herein, he will have his rights to seek reimbursement from Ford.

The judgment of the trial court in favor of plaintiff and against Ford is modified to reduce its amount from $7,666.00 to $4,500.00. As modified, said judgment is affirmed. The judgment of the trial court dismissing plaintiff's suit against defendants Vernon Passons and Jimmy Passons d/b/a Passons Ford Tractor Company is reversed and judgment is rendered in favor of plaintiff and against defendants, jointly with defendant Ford Motor Company for $4,500.00.

The costs incident to its appeal are taxed against Ford Motor Company.

The costs incident to the appeal of plaintiff George W. Taylor are taxed against defendants Vernon Passons and Jimmy Passons d/b/a Passons Ford Tractor Company.

Modified and affirmed in part, reversed in part, rendered.

Shriver, P.J. (M.S.), and Puryear, J., concur.