W. Ed BOOKER, Harriet A. Booker, W. Ed Booker, III, a partnership, d/b/a Booker Trading Company, Plaintiffs-Appellants,

v.

RALSTON PURINA COMPANY, INC., a corporation, Defendant-Appellee.

No. 81–5578.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 2, 1982.

Decided Feb. 10, 1983.

Glen R. Claiborne, Daniel, Claiborne & Lewallen, Knoxville, Tenn., for plaintiffs-appellants.

Robert R. Campbell, Hodges, Doughty & Carson, Knoxville, Tenn., for defendant-appellee.

Before KEITH and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This is a diversity action for damages arising from a breach of contract brought by W. Ed Booker, a citizen of Tennessee

doing business as the Booker Trading Company, against the Ralston Purina Company, Incorporated (Ralston), a Missouri corporation.

During 1973, Booker, a long-time consultant in the food marketing business, developed a new method of packaging entree meals. Through a process of freeze-drying Booker produced a handy, light-weight dinner with meat, sauce and vegetables. The product's advantages included ease of transportation, due to its compact size, and ease of preparation and consumption.

Booker contacted Ralston some time in 1973 or 1974, hoping it would be interested in assisting him in marketing and distributing his entrees. After a period of preliminary discussions and testing by both sides, serious negotiations between the parties began in April 1976. Ralston had conducted several sets of marketing projections which had indicated the product Booker suggested was promising and looked potentially profitable. On June 30, 1976 the parties reached an understanding and executed a contract providing that Ralston would test-market the entree product and, if it looked economically feasible, would mass-market the product. The contract further provided that Booker would receive a royalty fee for each case of entrees sold. The contract specified an elaborate calculation of royalties to be paid.

During late 1976 and 1977 Ralston produced some 1,975 cases of the entrees and actually test-marketed some 268 cases. Problems soon arose, however. For example, the meat was found to be tough and the sauce sour. By February, 1978, although Ralston assured Booker that his idea was still promising, it indicated that it must "assess" the situation before proceeding further. Through 1978 and 1979 Ralston continued to reassure Booker that the frozen entree concept was still feasible, but the company did nothing with it.

As a result of the delays and the apparent unwillingness of Ralston to proceed as agreed, Booker filed suit in the district court. The district judge referred the case to a United States magistrate pursuant to 28 U.S.C. § 636(c) for resolution of the controversy. After a short trial, the magistrate entered a decision pursuant to Rule 52(a), Fed.R.Civ.P. He found there had been a breach of contract and awarded plaintiff damages based on royalties owed Booker for the sale of about 268 cases of entrees actually sold. He further determined additional damages could not be awarded since they would be speculative and no method for their calculation was shown at trial. Booker appealed, arguing that the judge had erred by limiting damages to only the 268 cases of entrees sold.

Since defendant Ralston does not appeal the district court's holding that it breached the contract with Booker, the only issue on appeal is the measure of damages resulting from the breach. Further, the parties agree that Tennessee law is applicable in this case.

On appeal plaintiff Booker argues four bases for measuring damages for the alleged breach of contract. He contends first he should recover damages based on the amount of value the parties considered his idea had at the time of the contract's execution. Alternatively, he argues an award of damages could be based on profits he would have derived if Ralston had proceeded with testing and marketing, the value of the lost opportunity of marketing the product, or some method of valuation based on the rental value of his idea held by Ralston for five years. After careful study of the suggested approaches, we reject each as being too speculative or uncertain to support a damage award for breach of contract. *Ford Motor Co. v. Taylor,* 60 Tenn.App. 271, 446 S.W.2d 521 (1969); *Stevens v. Moore,* 24 Tenn.App. 61, 139 S.W.2d 710 (1940) (foreseeability of damages the key in determining amount of damage award); *Allen v. Elliott Reynolds Motor Co.,* 33 Tenn.App. 179, 230 S.W.2d 418 (1950) (damages must be ascertainable and not speculative).

In the June 30, 1976 contract the parties failed to specify any price or value paid for the product, but did incorporate an elaborate system of royalty payments. We therefore must assume, as the trial judge

did, that the sum of the royalty payments paid on the basis of sales was the amount of value Booker expected to receive for Ralston's use of his idea. Plaintiff does not present any reasons why we should stray beyond the plain and unambiguous language of the contract. To do so, absent some form of fraud or evidence that the contract did not accurately incorporate the wishes of the parties, would be to indulge in random speculation concerning what was in the minds of the parties at the bargaining table. The record indicates that Booker had an opportunity to receive a large lump-sum from Ralston for his product, but rejected it on the gamble and hope that he would receive more profits in the long run from a schedule of royalty payments.[1] Plaintiff had the opportunity at the bargaining table to insert clear and specific provisions in the contract, and his failure to do so cannot be corrected years later by a *post hoc* guess about what both parties may have felt was an accurate value figure.

Booker's second contention is that he should receive a damage award based on lost profits resulting from Ralston's failure to market the frozen entrees, and Tennessee law allows recovery of lost profits arising from breach of contract. *See Ford Motor Co. v. Taylor, supra* 446 S.W.2d at 530 (in sale of defective tractor to farmer, foreseeable damages include lost profits resulting from inability of farmer to cultivate crop); *Jennings v. Lamb,* 201 Tenn. 1, 296 S.W.2d 828 (1956) (failure to deliver timber to seller; foreseeable seller would lose profits if not delivered based on seller's past sales); *Black v. Love & Amos Coal Co.,* 30 Tenn.App. 377, 206 S.W.2d 432 (1947) (lost profits from failure of coal producer to supply requisite amount of coal recoverable). Where certainty or an ascertainable standard is not possible Tennessee consistently denies recovery. *See Maple Manor Hotel, Inc. v. Metropolitan Government of Nashville,* 543 S.W.2d 593 (Tenn.App.1975) (prospective apartment builder unable to recover lost profits from city for city's condem-

nation of adjacent street where apartment complex unbuilt and future profits are not measured with any degree of certainty); *Anderson-Gregory Co. v. Lea,* 51 Tenn.App. 612, 370 S.W.2d 934 (1963) (no recovery for lost profits which would have been realized absent a breach of contract; plaintiff had never conducted dredging operations and could show no method of ascertaining amount of profit might have made); *Cecil Corley Motor Co., Inc. v. General Motors Corp.,* 380 F.Supp. 819, 830 (M.D.Tenn.1974) (use of expert testimony as to potential profits new dealership might gain not sufficient to constitute certainty of future profits). In a recent Tennessee case, the court reaffirmed the requirement of certainty and some form of reasonably ascertainable standard before awarding lost profits. *Joy Floral Co. v. South Central Bell Telephone Co.,* 563 S.W.2d 190 (Tenn.App.1977). There, the court was faced with the question of whether a flower shop could recover lost profits resulting from the telephone company's failure to include the number of Joy Floral's main office in the white pages. *Id.* The company attempted to compare past sales with what it estimated it would have earned resulting from the telephone company's oversight. The court, after weighing the evidence presented by experts, ruled such figures were too speculative to allow a recovery.

■ In the present case Booker argues lost profits are measurable based on the various projections formulated by Ralston in its calculation of whether to enter the contract. However, Booker's product was highly innovative and untried at the time of the projections. Ralston planned a long and arduous testing period before investing any significant capital in the project. Not unlike a new business, the product had yet to prove itself as a winner and therefore profitable. *Maple Manor Hotel, Inc. v. Metropolitan Government of Nashville, supra; Agricultural Services Association, Inc. v. Ferry-Morse Seed Co.,* 551 F.2d 1057 (6th

**1.** In dispute is whether defendant Ralston offered $250,000 to buy the idea outright from Booker. Even if we accept the argument that such an offer was made, it was plainly rejected by Booker.

Cir.1977) (even though business active for over a year, insufficient evidence adduced that good will of business suffered as result of inability to perform as result of breach of contract). We hold that lost profits in this case are too speculative and uncertain to sustain a damage award.

We similarly find no merit in appellant's final suggestions that we allow damages based on some concept of foregone opportunity or rental value. Once again we are faced with a situation where plaintiff has not shown any means of measuring such a foregone opportunity or rental value. His product was innovative and untried. On one hand, it may have made Booker a millionaire but it may also have been commercially unattractive.

The decision herein places plaintiff in the unfortunate position of recovering very little after a long period of what may well have been unfair treatment by defendant Ralston. However, the fact remains that plaintiff could have written a provision into the contract for the evaluation of the entire product or specifying damages in case of breach.

We conclude that the award was properly limited to a judgment based on the number of frozen entrees sold, and affirm that judgment.