**SUPER HOOPER, INC., Plaintiff and Appellant,**

v.

**DIETRICH & SONS, INC., Defendant and Appellee.**

**Civ. No. 10559.**

Supreme Court of North Dakota.

March 29, 1984.

Farhart, Rasmuson, Lian & Maxson, Minot, for plaintiff and appellant; argued by Steven C. Lian, Minot.

Ployhar, Thorson & Weisenburger, Valley City, for defendant and appellee; argued by Roger R. Weisenburger, Valley City.

PEDERSON, Justice.

In December 1979, corporate officers of Super Hooper, Inc. and Dietrich & Sons, Inc. met to discuss the marketing of a device which, when affixed to a basketball hoop, would reward an accurate shot by returning the ball to the shooter. Theoretically, a missed shot requires the shooter to chase after the ball. Within a few days after this discussion, the two corporations exchanged letters and those letters constitute the contract now disputed.[1] About

---

**1.** Dietrich's letter to Super Hooper states:

"Dear Mr. Farhart:

"I enjoyed our meeting last week and thanks again for lunch.

"As we stated at our meeting we are interested in doing a test market of your product known as the Super Hooper. In a test of the product we will be exposing the Hooper to U.S., Canada and world sales.

"I am interested in starting our relationship as the Sole Distributor and when the product you have on hand is sold we will take over all manufacturing. Included in this would be product liability insurance, building and marketing of the Hooper.

"We would at that time work out a percentage of manufacturing cost or so much per unit.

"As I understand your supplies at the present time includes apromate [sic] 2500 sets. I will take all of them delivered 500 or so at a time. The price for these units will be Model 014, Dealer cost $23.50—10%–13% and Model 0516, $28.50—10%–15%—delivered at Valley City, N.D.

"The effort and moneys that are spent will be of a substantial amount. We know that when we contact dealers, schools, and national ac-

three months elapsed and Super Hooper sued Dietrich for breach of contract, seeking (1) specific performance (later abandoned) and (2) damages. In answering, Dietrich (1) denied the existence of a contract (apparently abandoned), (2) claimed it had fulfilled its obligations under the contract, and (3) alleged that Super Hooper breached the contract.

The case was tried to the court without a jury, resulting in a judgment for Super Hooper in the sum of $43,854.46 and terminating Dietrich's "right to act as manufacturer, distributor and representative of said Super Hooper product." Super Hooper appealed from the judgment and from a post-judgment order denying prejudgment interest. Dietrich did not cross-appeal. We affirm the judgment and the order.

Super Hooper argues that Dietrich did not "test market" the Super Hooper device and therefore it is entitled to recover damages of $150,000, representing the value of a reasonable "test market" effort, plus lost royalties of $239,500. As required by Rule 52(a), NDRCivP, the trial court found as fact:

> "That the Defendant [Dietrich] expended approximately Sixty Thousand Dollars ($60,000.00) in promoting the product. Subject contract contemplated expenditures of Fifty Thousand Dollars ($50,-000.00). The evidence indicates that it is as likely that the product failed as a result of lack of public acceptance as from inadequate test marketing. The test marketing efforts of the Defendant [Dietrich] were within the contractual contemplation of the parties." (Finding of Fact VII.)

Although neither party contended that the contract between Super Hooper and Dietrich is ambiguous, and there is no special finding or separate conclusion to that effect, the terms of the contract are obviously ambiguous and the parties appropriately offered oral testimony which was appropriately received and considered by the trial court.

■ The construction of a written contract is a question of law, not fact, as is the determination of whether or not a contract is ambiguous. *Johnson v. Mineral Estate, Inc.*, 343 N.W.2d 778, 780 (N.D.1984); *Sorlie v. Ness*, 323 N.W.2d 841, 844 (N.D.1982). But if the intent of the parties cannot be determined from the agreement alone, because of ambiguity or otherwise, interpretation of intent is a question for the fact finder. See *Zitzow v. Diederich*, 337 N.W.2d 799 (N.D.1983); *Bohn v. Bohn Implement Co.*, 325 N.W.2d 281 (N.D.1982).

■ If we were to assume that the contract between Super Hooper and Dietrich was free of ambiguity and interpret "as a matter of law" what obligations are imposed upon Dietrich by the words "doing a test market," without further definition, we would conclude that both the technique used and the extent of funds and effort

counts they will be trying to get a better price. We will expect all inquiries to be sent to us when they are received. I feel you have a product worth working with and after our test I think we will be able to open a larger volume. I have already contacted New Zeeland [sic] and Australia, they want us to send same product to test and look at.

"We are pressed for time with Christmas so close. If it is possible to have Jerry deliver the units this week please call. We will be here on Saturday.

> "Respectfully yours,
> "/s/ Richard J. Dietrich
> "Richard J. Dietrich, Pres."

Super Hooper responded as follows:

"Dear Mr. Dietrich:

"Thank you for your letter of December 19, 1979.

"The price set forth therein was 10% less than our understanding. However, we are anxious to do business with you and your company. The fact that you have agreed to take our entire inventory which is approximately 3,000 units rather than 2,500 is very beneficial to us and, therefore, we have decided to accept your price quoted.

"Further, it is our understanding that we will be paid for the units at time of delivery. This is important to us as we have incurred considerable expenses in the manufacturing of the units.

> "Very truly yours,
> "/s/ Moody M. Farhart
> "Moody M. Farhart, Sec.-Treas.
> "Super Hooper Corporation"

expended are at the reasonable discretion of Dietrich. The phrase "test market" is labeled by Super Hooper as "words of art" but no definition is supplied and our research discloses no judicially recognized definition.

The Georgia Court of Appeals, in a case where the contract documents were much more explicit than the Super Hooper-Dietrich contract, upheld a trial court determination that there was no failure to test market as a matter of law where it had been shown that there were sufficient efforts under any reasonable construction of the agreement. *Knight Industries, Inc. v. Turner Marketing*, 157 Ga.App. 177, 276 S.E.2d 860 (1981).

The United States Court of Appeals, Sixth Circuit, in a case that also involved a test marketing contract that was considered "unambiguous," but otherwise very similar to this case, apparently found no need to define "test marketing." That court pronounced several maxims in *Booker v. Ralston Purina Co., Inc.*, 699 F.2d 334 (6th Cir.1983) which apply directly or by analogy here:

"Plaintiff had the opportunity at the bargaining table to insert clear and specific provisions in the contract, and his failure to do so cannot be corrected years later by a *post hoc* guess ..." [Emphasis in original.] 699 F.2d at 336.

"We similarly find no merit in appellant's final suggestions that we allow damages based on some concept of foregone opportunity or rental value. Once again we are faced with a situation where plaintiff has not shown any means of measuring such a foregone opportunity or rental value. His product was innovative and untried. On one hand, it may have made Booker a millionaire but it may also have been commercially unattractive." 699 F.2d at 337.

See also Circuit Judge Arnold's opinion in *Unique Systems, Inc. v. Zotos Intern., Inc.*, 622 F.2d 373 (8th Cir.1980).

■ If we understand correctly, it is Super Hooper's contention that from Dietrich's own evidence as to a reasonable "test market," it can be determined *as a matter of law* that Dietrich defaulted to the extent of $150,000 on its obligation to test market the Super Hooper device. We said in *First Nat. Bank of Fargo v. Ketcham*, 336 N.W.2d 140, 144 (N.D.1983) that:

"Testimony unfavorable to one's own contention can be a 'judicial admission.'"

Nevertheless, as we previously pointed out in *Malarchick v. Pierce*, 264 N.W.2d 478, 480 (N.D.1978), "it is still for the trier of fact to decide the issue *upon all the evidence*." [Emphasis in original.]

Super Hooper has explained no basis upon which this court should declare that Finding of Fact VII, or any other in this case, is clearly erroneous under Rule 52(a), NDRCivP. There is no justification in the record for Super Hooper's claim that Dietrich "totally failed" to perform a "test market." The court did not err in failing to award $150,000 for the default in test marketing.

■ Another contention by Super Hooper is that the trial court erred in failing to award $239,500 for lost royalties. The letter from Dietrich to Super Hooper states: "We would at that time [when products on hand are sold and Dietrich takes over the manufacture of additional units] work out a percentage of manufacturing cost or so much per unit." There is little enlightening testimony explaining the statement. On its face it appears to be an agreement to agree on a royalty at some future time.

This court in *Hayashi v. Ihringer*, 79 N.D. 625, 58 N.W.2d 788 (1953), at syllabus 1, held that: "A mere statement of an intention to act in a certain way is not a promise ..." See also *Bottineau Public Sch. Dist. #1 v. Currie*, 259 N.W.2d 650, 654 (N.D.1977). It is an elementary principle of law that agreements to agree are rarely enforceable. See *Opdyke Inv. Co. v. Norris Grain Co.*, 413 Mich. 354, 320 N.W.2d 836 (1982); *Deadwood Lodge No. 508, Etc. v. Albert*, 319 N.W.2d 823 (S.D. 1982); 17 Am.Jur.2d Contracts § 26.

It was not error for the trial court to fail to find that Super Hooper was entitled to lost royalties from Dietrich.

In rejecting Super Hooper's claim for prejudgment interest the trial court, after citing authority (22 Am.Jur.2d Damages § 185) that "in a growing number of jurisdictions, the allowance of interest on unliquidated claims is discretionary," held:

"... In the subject case, there were several problems which led the Court to find that the interest in this case was not liquidated.

"First, there were allegations of fraud and improper marketing procedures for which the Plaintiff claimed extensive damages. The Court found against the Plaintiff on this matter. Secondly, there was a discount dispute as to the applicability of one of the two discounts. Both parties submitted letter brief on this matter and the Court found in favor of the Defendant. Thirdly, there was no definite time set for payment on the obligations of the Defendant. It is apparent that there was a time limit for the 'prompt payment' discounts, however, there was no definite time as to when the payment would be made in the absence of prompt payment. As a general rule, interest should not be allowed on a non-liquidated or disputed claim for breach of contract until the amount due for such breach is definitely determined. 25 C.J.S. Damages § 52B, Page 795; *North American Pump Corporation v. Clay Equipment Corporation*, 199 N.W.2d 888 (N.D.1972). Accordingly, I find that the claim in this matter was unliquidated and disputed until the Court's finding and I do not grant interest other than as provided in the original Judgment."

 A person who is entitled to recover a liquidated claim "also is entitled to recover interest thereon." See § 32–03–04, NDCC; *Hall GMC, Inc. v. Crane Carrier Co.*, 332 N.W.2d 54 (N.D.1983); *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641 (N.D.1976).

Ordinarily, the breach of a written contract results in a liquidated claim and inter-

est must be awarded in accordance with the statute. Difficulty in computation does not defeat one's right to interest, if it is susceptible of being made certain by mathematical calculation from known factors. See 25 CJS Damages § 2, p. 621; 22 Am. Jur.2d Damages § 186.

In this case the ambiguity in the contract terms makes the claim uncertain as to both time and quantity. The trial court correctly concluded that it was unliquidated and rejected the demand for prejudgment interest.

The judgment and the order are affirmed. Dietrich is entitled to costs on appeal.

ERICKSTAD, C.J., and GIERKE, SAND and VANDE WALLE, JJ., concur.