COOPER PAINTINGS & COATINGS, INC., Appellee,
v. SCM CORPORATION, Appellant. —457 S.W.2d 864.

Eastern Section. May 25, 1970.

Certiorari Denied by Supreme Court September 8, 1970.

14

Arthur G. Seymour, Knoxville, for appellant.

John M. Foley, Knoxville, for appellee.

PARROTT, J. In this circuit court action defendant, SCM Corporation, has appealed from the action of the circuit judge entering judgment based on a jury verdict against it in favor of plaintiff, Cooper Paintings & Coatings, Inc., in the amount of $5,745.72.

The assignments of error complain of the failure of the trial court to sustain defendant's motion for directed verdict and the giving of an alleged erroneous charge to the jury. For reasons hereinafter given, the assignments are overruled.

Plaintiff predicates its recovery on alleged breach of express and implied warranties and/or misrepresentation of the fitness and suitability of certain synthetic elastic roofing materials manufactured by the defendant and used by the plaintiff on dome-type roofs of school

buildings in Mountain City, Tennessee. This suit seeks recovery of the cost of repairing the holes and cracks which developed after the roofs were completed.

Defendant's plea denies any liability on the basis there was no privity of contract; that defendant made no express or implied warranty to plaintiff; that the material was not defective or was there made any public misrepresentations. Defendant contends the holes and cracks were caused either by faulty application of its materials by plaintiff or faulty design or construction of the roof to which defendant's materials were applied. Also, defendant contends that any liability which it might otherwise have incurred was validly disclaimed or limited by provisions on the label of the material.

The products involved in this suit are neoprene and hypalon liquid coatings which are rubbery or flexible material referred to in the roofing industry as elastomers or elastomeric systems. The materials may be applied to roof decks with sprays or rollers.

In the instant case they were applied to three dome-type roofs of the Mountain City High School by plaintiff, Cooper Paintings & Coatings, Inc. The buildings were designed and construction was supervised by Abernathy & Robinson, architects. Armstrong Construction Company was the general contractor, Industrial Decking and Roofing Company, the subcontractor, to roof the buildings. Plaintiff, Cooper Paintings & Coatings, Inc., entered into a second sub-contract with Industrial to apply the elastomer coats to the insulrock roof deck which had been installed by Industrial.

On these roofs plaintiff was required to first put down a thin mesh coat of fiberglass, then a 20 mil. thickness

coat of neoprene which was covered with a final coat of hypalon.

Shortly after the completion of the roofs, leaks developed in one of the domes. An inspection of the roofs revealed numerous pin holes and cracks in the elastomer coating.

At the request of plaintiff, Mr. Wolfe, sales manager of the defendant, made an inspection of the roofs. It was Mr. Wolfe's opinion the pin holes and cracks resulted from improper application of material and a movement or shifting of the insulrock boards used in the sub-roof. Mr. Wolfe recommended and furnished free of charge an additional 150 gallons of hypalon to be used as another finish coat. Shortly after application by the plaintiff of this additional hypalon, the roofs again began to leak. To repair these leaks Mr. Cooper, using another manufacturer's products, taped the joints of the sub-roof and applied neoprene over the tape and then again completely recoated the domes with hypalon which apparently produced a dry roof.

The record reveals that the original specifications as drawn by Abernathy and Robinson, architects, call for a plastic coated roof other than one manufactured by defendant. Mr. Tippitt, employee of Tennessee Structural Products Company who was the exclusive distributor for defendant's products in Tennessee, called on the architects who, at Tippitt's insistence, issued an addendum to the specifications permitting the use of defendant's material. According to Mr. Tippitt's testimony, his company was a manufacturer's representative for the defendant and its products.

Prior to Mr. Tippitt's meeting with the architects, he had furnished plaintiff brochures and technical manuals published by the defendant pertaining to the use and application of its elastomer-type roofs. After the specifications had been changed to permit the use of defendant's products, plaintiff and the prime roofing contractor met with Mr. Tippett to discuss the roofs in question. As a result of this meeting, Cooper became the successful bidder and ordered the necessary materials to build the roofs through Tennessee Structural. The materials were shipped by the defendant directly to the job site.

■ From the proof in this record, we think it is fairly established that Tennessee Structural was not a general agent of the defendant. However, the proof does appear to be sufficient for the jury to reasonably conclude Tennessee Structural was for limited purposes a special agent of the defendant with authority to make warranties of the quality and fitness of the defendant's products. Furthermore, there is evidence from which the jury could have reasonably inferred warranties of the products were made. See Quaker Oats Co. v. Davis, 33 Tenn.App. 373, 232 S.W.2d 282.

■ If defendant's agent, Tennessee Structural, from which plaintiff purchased the material, did make material false representations, whether such were made on its own or contained in materials furnished to Tennessee Structural by defendant, then no problem of privity arises because such representations would be binding upon the defendant. It is uncontroverted the plaintiff received from Tennessee Structural written material containing representations of fitness and suitability of the defendant's products. Unquestionably these materials were prepared by the defendant and furnished to Ten-

nessee Structural for the purpose of inducing sales of its products. Under these circumstances it is inferable that the defendant authorized and made Tennessee Structural its agent for the purpose of advising prospective customers of the quality of its products. Under these circumstances T.C.A. 47-2-313(1) (a) would be applicable and liability could be imposed because such statements made by the seller, whether written or oral, extolling the virtues of a product, "becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." See also proposed Sec. 552D, Restatement, Torts, Second; Ford Motor Co. v. Lonon, 217 Tenn. 400, 398 S.W.2d 240.

Another contention of the defendant is that there can be no liability because on the label of the materials is a disclaimer saying: "* * * we make no warranties of any kind, express or implied * * *." The label also contains language limiting damages to the return of the material.

██ When one reads the entire label, both the disclaimer and the limitation of remedies can be reasonably construed as applying only to claims arising out of the improper use of the material and not to claims arising out of unfitness, suitability or quality of the material itself. Next to the final paragraph it is stated: "We guarantee the standard quality of this material and its adherence to our published specifications, if any." All the other language pertains to the use or misuse of the material.

It is also noted the disclaimer does not mention merchantability as required by T.C.A. 47-2-316(2) or does it clearly appear the disclaimer was in a conspicuous place on the materials. Moreover and probably controlling is

the fact that since this disclaimer of the seller was made after the contract of the sale had been entered into, it must be held to be ineffective to modify the contract. Ford Motor Co. v. Taylor, 60 Tenn.App. 271, 446 S.W.2d 521; T.C.A. 47-2-314.

■ Even if we are wrong in holding agency has been established under the proof, the plaintiff would not necessarily be denied a recovery. Plaintiff's alternative theory is based upon public material misrepresentations of the character and quality of the defendant's products. In cases based upon misrepresentation rather than express or implied warranty, privity of contract is not required nor is a disclaimer of liability by the seller effective. Ford Motor Co. v. Taylor, supra.

In Ford Motor Company v. Lonon, supra, our Supreme Court approved the proposed Sec. 552D of the Restatement of Torts (Second) which permits recovery by the purchaser for pecuniary loss of a defective product when there is no privity. Sec. 552D says:

"One engaged in the business of selling chattels who, by advertising, labels or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for pecuniary loss caused to another by his purchase of the chattel in justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently."

In the Lonon case the Supreme Court also gave its approval to Sec. 402A of the Restatement of Torts (Second), which is very similar to Sec. 552D. Sec. 402A dispenses with the proof of negligence and privity but is not relevant or applicable to this case because that sec-

tion only applies where a defective product is unreasonably dangerous and in cases where physical harm to persons or property is involved.

■ From the evidence in the instant case, the jury could reasonably find there was a material misrepresentation by the defendant concerning the character or quality of its products and such was relied upon by the plaintiff in purchasing the products. The proof shows that defendant made available to users in general of its products written data respecting or pertaining to quality, fitness and merchantability of the materials. Tennessee Structural placed in the hands of the plaintiff, prior to the purchase, such written data. We think it reasonable for the jury to assume the plaintiff was influenced and relied upon this data in making his purchase.

■ Plaintiff's expert witness, Dr. Archer Matthews, Associate Professor of Engineering Mechanics at the University of Tennessee, testified he made laboratory tests of samples of the elastomer material taken from Mountain City High School buildings. These tests were to determine the tensile strength, elasticity and elongation qualities of the material. According to Dr. Matthews' testimony these tests proved the materials did not meet the standards or specifications represented in the publications circulated by the defendant.

The defendant, through its own expert witness, George Carl Vogelsang, its technical director, vigorously controverted any assertion tending to show that the materials furnished to plaintiff were defective or failed to meet the specifications and standards set forth in defendant's publications.

To us the testimony of these experts presented a question of fact for the jury who could have concluded the qualities of defendant's products had been materially misrepresented.

██ Finally and lastly we reach defendant's insistence the trial court erred in charging the jury on the question of agency. The portion of the charge defendant complains of, if copied in this opinion, would unduly lengthen it. Under the facts of this case we cannot say the trial judge's charge on agency was an erroneous statement of the law. The judge did not distinguish between general and special agency but in our opinion, when considered as a whole, was sufficiently broad enough to justify the jury to find the existence of agency.

Likewise the court did not precisely charge on the question of misrepresentation but again, when the charge is considered as a whole, it is broad enough for the jury to return a verdict based upon misrepresentation.

Consequently, we find no prejudicial error in the charge. Moreover, it is noted the defendant never made any exception to the court's charge but only submitted one special request which pertained to the disclaimer of liability on the label of the material.

For the above stated reasons the judgment is affirmed with the costs taxed to the appellant.

McAmis, P. J., and Cooper, J.. concur.