**COMMERCIAL REFRIGERATION, INC., Appellant,**

v.

**REFRIGERATION PRODUCTS CO., Appellee,**

**and**

**Silencer Corporation.**

**ENGINEERED BUILDING INC., Appellant,**

v.

**REFRIGERATION PRODUCTS CO., Appellee,**

**and**

**Silencer Corporation.**

Court of Appeals of Tennessee, Eastern Section.

March 29, 1979.

Certiorari Denied by Supreme Court Aug. 6, 1979.

John L. Kiener, of Cantor & Kiener, Johnson City, for Commercial Refrigeration, Inc.

Olen G. Haynes and Jean A. Stanley, of Hicks, Arnold & Haynes, Johnson City, for Engineered Buildings, Inc.

James E. Brading II, with Herndon, Coleman, Brading & McKee, Johnson City, for Refrigeration Products Co.

S. Morris Hadden and Steven C. Rose, of Hunter, Smith, Davis, Norris, Treadway & Hadden, Kingsport, for Refrigeration Products Co.

## OPINION

SANDERS, Judge.

This appeal involves the question of liability of a manufacturer's representative in a products liability suit.

The Plaintiff-Appellant, Engineered Buildings, Inc., was the prime contractor for the construction of a large refrigerated warehouse for Industrial Jobbers, Inc., at Gray, Tennessee. The Plaintiff-Appellant, Commercial Refrigeration, Inc., was the subcontractor for the installation of the necessary refrigeration for the building. Industrial Jobbers, Inc., also employed the services of Mr. McCoy, who was a consulting engineer with expertise in food refrigeration. The duty of Mr. McCoy was to assist and advise with the owner and contractors as needed during the construction of the building.

The conventional method for mounting freezing units on cold storage buildings is known as "saddle mounts" on the side of the building to be refrigerated. However, because of a desire for future expansion on the building involved, Mr. McCoy conceived the idea of departing from the conventional method of mounting the freezing units and going to a unique and untried method of mounting self-contained units on the roof of the building.

He contacted the Defendant-Appellee, Refrigeration Products Co., which is a manufacturers' representative, for the purpose of having the Defendant try to find a company which would manufacture the type of equipment desired. Appellee, in turn, contacted the Defendant, Silencer Corporation, which was engaged in manufacturing refrigeration equipment.

A conference was then held among Mr. McCoy, Mr. Stanley, President of Plaintiff Commercial Refrigeration, Inc., Mr. Haynes, President of Defendant Silencer Corporation, and Mr. Leapley, President of Defendant Refrigeration Products Co. At this meeting Mr. McCoy told the Defendants in detail what his requirements would be for freezing capacity, etc., of the units to

be manufactured. Mr. Haynes advised he was sure he could produce the units.

The details as to the amount charged by Defendant Silencer for the units and the commission received by Defendant Refrigeration Products Co., as manufacturer's agent, are not explained in the record but exhibits indicate Silencer was to receive $42,100. To this amount Defendant Refrigeration Products Co. added $2,900 and submitted a bid to Commercial Refrigeration, Inc., for $45,000. Commercial Refrigeration, in turn, added a substantial amount to the bid and submitted a bid to Plaintiff Engineered Buildings, Inc., for $84,003.

The units were delivered to the job site and installed but, due to defective workmanship by Defendant Silencer, never worked properly. It was necessary to remove the units and install the conventional wall-mounted units.

The Plaintiffs each filed suit against the Defendants. Each Plaintiff relied on breach of implied warranty. Plaintiff Engineered Buildings, Inc., also alleged breach of express warranty and tortious misrepresentation.

The cases were consolidated for trial and tried before the judge without a jury. The Court found the issues in favor of both Plaintiffs and against the Defendant, Silencer Corporation. That case has not been appealed and is not before us for consideration. However, the Court found the issues in favor of Defendant Refrigeration Products Co. and the Plaintiffs have both appealed and assigned error.

The thrust of the Plaintiffs' assignments of error is that the Court failed to find the Defendant liable under T.C.A. § 47–2–315 for implied warranty.

After the trial of the case the Court filed a detailed and comprehensive finding of fact and conclusions of law. Because there was a direct conflict in the testimony of one of the witnesses for one of the Plaintiffs and one of the witnesses for one of the Defendants and because the Trial Court is in a much better position to pass upon the credibility of these witnesses than this court, we adopt a substantial portion of his findings of fact.

The Court found the Defendant in this case, as a manufacturer's representative, acted "merely as a conduit to merely bring together manufacturer and customer." The Court further said: "This Court has very carefully read this record and there is no evidence that any party to this litigation relied upon the manufacturer's representative's skill or judgment to select and furnish the freezer units in question, particularly before any contract was let or building started. True, there was discussion about the rooftop type freezer unit as distinguished from the wall mounted unit. It is also true that after the units were installed and trouble developed, the prime contractor went back to the man with whom he'd dealt and paid his money, the manufacturer's representative, but all of this is after the fact. There is no testimony that anyone relied upon the representative's skill and judgment, as contemplated by the implied warranty statute (T.C.A. 47–2–315) in the initial selection. In fact, testimony is quite to the contrary. Plaintiff Engineered Buildings, Incorporated, via its president, Mr. Stultz, knew the units were to be manufactured by Silencer Corporation in Atlanta; he knew and relied upon the reputation and skill of the consulting engineer employed by the owner; he testifies that Mr. Leapley never guaranteed that the units would bring the temperature down to $-10°$ fahrenheit, a prime consideration in selection of these units; he was aware that both Mr. Stanley, his subcontractor charged with responsibility for inspection and/or installation of the units visited the Silencer Corporation plant in Atlanta during construction of the units; and he had confidence in the skill of Mr. Stanley to do this.

"In the opinion of this Court, these facts preclude the imposition of any liability under an implied warranty theory of fitness for a particular purpose insofar as plaintiff Engineered Buildings, Incorporated, is concerned.

"Insofar as plaintiff Commercial Refrigeration, Inc., is concerned, it would appear

to this Court that it has even less footing upon which to predicate liability against the manufacturer's representative. Its president, Mr. Stanley, made a trip to the Silencer Corporation plant in Atlanta. One of the units had been completed and was in operation while the other four units were in various stages of completion. By coincidence, Mr. McCoy, the owner's consulting engineer, was also present at the plant at the same time. It was his specific job to supervise the design created by the manufacturer, particularly as the same applied to refrigeration. Each of these refrigeration experts made an inspection of one completed and operational unit as well as an opportunity to examine the uncompleted units as fully as they might have desired.

"In the opinion of this Court, liability on the manufacturer's representative, Refrigeration Products Company, is precluded under Section 47–2–315 not only by reason of the fact that the parties were not relying upon the skill and judgment of anyone other than the manufacturer, Silencer Corporation, but also under Section 47–2–316 in that each of the parties had ample opportunity to, and probably did, examine the goods during this visit to the Silencer Corporation plant. Too, testimony reflects that it is the usage of the trade that a manufacturer's representative does not personally give any guarantee or warranty.

"Since the ultimate cause of the failure of the units to do the job required was later determined to be air infiltration, surely an inspection by two refrigeration experts would have, or at least, should have revealed this fact during the manufacturing process, particularly where one of the units had been completed and was actually in operation."

In the case of *Cooper Paintings & Coatings, Inc. v. SCM Corporation*, 62 Tenn.App. 13, 457 S.W.2d 864, the court held a manufacturer's representative liable for breach of warranty. However, as pointed out by the Trial Court, the facts in that case are distinguishable from those in the case at bar. In the *Cooper* case the court found the proof was sufficient for the jury to have

found the defendant was a special agent with authority to make warranties of the product and the jury could have inferred such warranties were made.

T.C.A. § 47–2–315 provides: "IMPLIED WARRANTY—FITNESS FOR PARTICULAR PURPOSE.—Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

Since the proof supports the findings by the Trial Court that the Defendant was only a conduit through which the manufacturer and Plaintiffs were brought together and Plaintiffs did not rely upon Defendant's skill or judgment to select or furnish suitable goods, we find no error in the judgment of the Court.

The assignments of error are overruled. The judgment of the Court is affirmed and the cost of this appeal is taxed to the Appellants.

PARROTT, P.J., and FRANKS, J., concur.