FIRST NATIONAL BANK OF
LOUISVILLE, Plaintiff,

v.

BROOKS FARMS, a Tennessee
partnership, Defendant,

and

George C. BROOKS, Sr., George C.
Brooks, Jr., and Carl Lee Brooks,
d/b/a Brooks Farms, a Tennessee part-
nership, Third–Party Plaintiffs–Appel-
lees/Cross Appellants,

v.

A.O. SMITH CORPORATION, Third–
Party Defendant/Cross–Appellee,

and

A.O. Smith Harvestore Products, Inc.,
Hermitage Harvestore Systems, Inc.,
and Frank Osborne, Third–Party De-
fendants–Appellants.

Supreme Court of Tennessee,
at Nashville.

Dec. 9, 1991.

M. Taylor Harris, Jr., Nashville, for First Nat. Bank of Louisville.

William M. Leech, Jr., Dennis J. Meaker, James M. Weaver, Malcolm L. McCune, James A. Vick, Nashville, for George C. Brooks, Sr., George C. Brooks, Jr., Carl Lee Brooks d/b/a Brooks Farms.

Donald E. Egan, Lee Ann Watson, David K. Schmitt, Carole J. Ryczek, Chicago, Ill., David J. Pflaum, Nashville, for A.O. Smith Corp.

Donald E. Egan, David K. Schmitt, Andrew M. Hale, Chicago, Ill., Robert L. Crossley, Richard E. Herod, James A. Delanis, Nashville, Thomas W. Hardin, Columbia, for A.O. Smith Harvestore Products, Inc.

Luther E. Cantrell, Jr., Nashville, for Hermitage Harvestore Systems, Inc., and Frank Osborne.

## OPINION

REID, Chief Justice.

This case presents appeals by the manufacturer and the dealer/seller of Harvestore agricultural feed storage facilities from judgments on jury verdicts for damages in favor of dairy farmers who purchased the facilities from the dealer. For the reasons hereinafter stated, the judgment against the manufacturer is affirmed, and the judgment against the seller is reversed.

In response to a suit by the First National Bank of Louisville against Brooks Farms, the dairy farmers, for the balance due on a contract for the lease-purchase of the Harvestore silos, Brooks Farms brought a third-party action against A.O. Smith Harvestore Products, Inc. (AOSHPI), which manufactured the silos, and Hermitage Harvestore Systems, Inc. and its agent Frank Osborne (Hermitage), the dealer who sold the silos to Brooks Farms. The purchaser alleged sale of a defective product, fraudulent misrepresentation, breach of express and implied warranties, negligent design in manufacture, unfair and deceptive business acts and practices, negligent misrepresentation, and innocent misrepresentation, and sued for compensatory and punitive damages. Prior to trial, all claims except those charging misrepresentation were dismissed. Brooks Farms confessed judgment in favor of the bank for the amount due. During trial the claim of negligent misrepresentation was dismissed, and the case went to the jury on charges of fraudulent misrepresentation and innocent misrepresentation.

The substance of the purchasers' proof was that representations in advertising brochures and promotional films regarding the Harvestore system of agricultural feed storage made by the manufacturer and dealer and relied upon by the purchasers to their detriment were false. The evidence showed that the Harvestore silos did not preserve feed for Brooks Farms's dairy cattle in accordance with the representations made by Hermitage and in the advertising literature and films produced by AOSHPI. The proof showed that because

feed stored in the structures lost its nutritional value the cattle produced less milk, which resulted in reduced profits to the farmers, all contrary to representations made to them.

When the Harvestore structures were purchased, Brooks Farms signed purchase orders containing language to the effect that Hermitage was an independent contractor and that none of the representations made by the dealer were binding on the manufacturer. The purchase orders also stated that the buyer had not relied upon any representations, oral or written, or any advertising in purchasing the product. Rather, the orders read, "[b]uyer recognizes that any advertisements, brochures, and other written statements which he may have read … as well as any oral statement which may have been made to him, concerning the potential of the Harvestore [silos] … are not guarantees and he has not relied upon them as such because the products will be under the buyer's exclusive management and control...."

In a memorandum opinion prepared after the trial, the trial judge summarized the critical proof as follows:

> [I]t is sufficient to state that the record reflects a pattern of fraud and deceit by [AOSHPI] dating from at least the 1960's. No jury could consider the plain language of the advertisements, the internal research memoranda from AOSHPI and the testimony of the engineering personnel from AOSHPI and reach any other conclusion than that reached by the jury in this case.

> All of these promotional documents submitted to the Brookses prior to the purchase of the Harvestores contained the clear representation that the only time oxygen could ever get into contact with the stored feed was during the initial loading process and that such small amounts of oxygen would be consumed within a matter of hours and that thereafter no oxygen could come into contact with the feed. These representations are plainly false. Aside from the fact that the Brookses would be presumed to rely

upon these representations, there was adequate testimony of such reliance....

The jury found the manufacturer guilty of intentional misrepresentation and innocent misrepresentation and the dealer guilty of innocent misrepresentation. It awarded compensatory damages of $1,171,-000, an amount that includes lost profits, against AOSHPI and Hermitage and punitive damages of $466,465 against AOSHPI.

The Court of Appeals affirmed the judgment of the trial court. Permission to appeal was granted by this Court to consider the appellants' contention that proposed Section 552D of the *Restatement (Second) of Torts (Restatement)* adopted by the Court in *Ford Motor Company v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1966), should be abrogated. Development in the law since the Court decided *Lonon* makes review timely and appropriate. (For a recent review of what is described as "the most significant legal development taking place according to the common law wont," see J. Wade, *Strict Products Liability, A Look at Its Evolution* 1 (October 1989) (publication of the American Bar Association).) Since liability in *Lonon* was based on innocent misrepresentation, the law of that case will be discussed in connection with the dealer's liability in this case, which also is based on innocent misrepresentation.

■ However, disposition first must be made of the issues raised by AOSHPI. The manufacturer was found by the jury to be guilty of intentional or fraudulent misrepresentation, which is a cause of action based on the common law tort of deceit. *See American Law of Products Liability* § 25:1. In *Haynes v. Cumberland Builders,* 546 S.W.2d 228 (Tenn.App.1976), the Court of Appeals set forth the elements of the common law action for fraud and deceit:

When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent

intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury.

(Citations omitted.) 546 S.W.2d at 232. The evidence supports the jury's finding of fraud against the manufacturer and the award of punitive damages. *See Inland Container Corporation v. March,* 529 S.W.2d 43, 44–45 (Tenn.1975) ("punitive damages are ... awarded in cases involving fraud"); *Telephone and Telegraph Co. v. Shaw,* 102 Tenn. 313, 318, 52 S.W. 163 (1889) ("where fraud ... intervenes, the law blends the interests of society and of the aggrieved individual and gives damages such as will operate as an example or warning to the parties or others to deter").

■ AOSHPI contends that since reliance is a requisite element for any cause of action based on misrepresentation, Brooks Farms cannot recover for misrepresentation because in the purchase order agreements, which contained bargained for duties and liabilities, it acknowledged and agreed not to rely upon representations made by the manufacturer or seller. The argument is that the purchasers have acknowledged that they did not rely upon representations made with regard to the quality or characteristics of the product.

Many suits have been filed against the manufacturer and their dealers by other purchasers involving essentially the same facts and circumstances as in the present case. The manufacturer in this case relies upon the same theories of liability and asserts the same defense as in the other cases. *See, e.g., Agristor Leasing v. AOSHPI,* 869 F.2d 264 (6th Cir.1989) (affirmed jury verdict against AOSHPI for $1,090,703.60 in compensatory and punitive damages on theories of strict tort liability, fraud, and negligent and commercial misrepresentation); *Agristor Leasing v. Saylor,* 803 F.2d 1401 (6th Cir.1986) (although the case was remanded for new trial for consideration of a statute of limitations issue, the court affirmed the trial court's rulings, which gave no effect to the disclaimers of reliance, allowed submission of

tortious misrepresentation claims to the jury, and allowed punitive damages to be assessed against the dealer and its agent); *Branscum v. 4-J Harvestore, Inc.*, 886 F.2d 334 (9th Cir.1989) (unpublished opinion) (affirmed summary judgment granted in favor of the dealer; claim for strict liability was not asserted in either the original or amended complaint, and the farmers' claim for negligence was based on economic losses, which is not a part of tort law in Idaho); *Saylor v. AOSHPI*, 872 F.2d 1028 (6th Cir.1989) (unpublished opinion) (affirmed jury verdict against AOSHPI and its dealer for compensatory damages of $875,000 plus pre-judgment interest on theories of strict product liability and fraudulent misrepresentation); *Lollar v. AOSHPI*, 795 S.W.2d 441 (Mo.App.1990) (affirmed entry of jury verdict rendered against AOSHPI for fraud in the amounts of $426,000 actual and $500,000 punitive damages). The defendant apparently insisted in the earlier cases that the portion of the sales contract signed by the purchasers by which it hoped to escape liability for its fraudulent misrepresentations was a disclaimer of *liability*. When that defense was unsuccessful, it adopted the argument used in this case that the purchaser "disclaimed *reliance.*" The manufacturer insisted that, therefore, there was no evidence of reliance to submit to the jury.

This defense failed in *Agristor Leasing v. AOSHPI*, 869 F.2d at 268, however, when the court held correctly that Tennessee law "gives no effect to disclaimers in the presence of fraud," 869 F.2d at 268 (citing *Houghland v. Security Alarms & Services, Inc.*, 755 S.W.2d 769, 773 (Tenn. 1988), and *Cooper Paintings & Coatings, Inc. v. SCM Corp.*, 62 Tenn.App. 13, 457 S.W.2d 864, 867–68 (1970)). With regard to the contention that there was no evidence of *reliance*, the court held that the issue presented a jury question, which was resolved by the jury's general verdict against the defendant. Likewise in this case, the jury verdict against AOSHPI constitutes a finding of all the elements of fraudulent misrepresentation, including reliance. The trial court's judgment against AOSHPI based on fraudulent misrepresentation will be affirmed. Finding liability against AOSHPI based on this common law action of fraud and deceit and awarding compensatory and punitive damages thereon was not dependent upon any rule of law first approved in *Lonon.*

■ As previously stated, the liability of the dealer and its agent is based on innocent misrepresentation, which was made a part of the common law of Tennessee by the Court in *Lonon*, 398 S.W.2d at 240. In *Lonon*, the plaintiff had visited tractor dealerships for the purpose of selecting a tractor suitable for his general farming activities. At the dealerships, he obtained sales literature describing various tractors, including the one he subsequently purchased. The plaintiff testified that he read the brochures describing the tractor and discussed the qualities and characteristics of the tractor with the dealer. The dealer testified that the statements he made to the farmer regarding the tractor were based upon the Ford sales literature supplied to him. The dealer further testified that Ford carried on an extensive advertising program promoting the sale of its products in farm magazines, on television, and by other advertising media.

The tractor that the plaintiff purchased from the dealer was mechanically defective and never functioned properly. The proof showed that the value of the tractor was less than one fourth of its cost, that the purchaser incurred substantial expenses in trying to repair it, and that the purchaser lost critical time from planting his crops causing a substantial reduction in production.

The Court found the manufacturer liable, as follows:

The basic issue presented in this case is whether the manufacturer of a product that has been found to be seriously defective and unsuitable for use should be liable for a resulting commercial loss to the purchaser where there are no direct contractual relations between the purchaser and the manufacturer, in a situation where the purchaser has relied on

the manufacturer's booklets and trade name in making the purchase.

We have concluded that the manufacturer should be liable in this situation. While this holding represents some development in the law, we believe that this development is needed to keep pace with modern conditions, and is supported by substantial legal authority throughout the country. While most of the decisions in other states holding the manufacturer liable without privity of contract have related to physical injury, a number of the more recent cases have applied the same principle to commercial losses resulting from a defectively manufactured product.

398 S.W.2d at 242–43. Liability was found because, in the words of the Court,

> [i]t seems unfair to place increasing burdens on retailers, even as to latent defects, and to exempt from responsibility the manufacturer, who normally determines what safety precautions shall be taken before the product is placed on the market, and who is the one most likely to have been careless when a particular item proves to be defective and unreasonably dangerous.

398 S.W.2d at 250. Prior to *Lonon*, the only means whereby the manufacturer of a product might be held liable to the consumer was by an action under the Sales Act against the retailer and by successive claims for indemnity up the chain of distribution, described by the Court as "a wasteful and time-consuming series of actions." *Id.* Further, "There existed ... certain impediments to these types of actions that sometimes precluded the innocent purchaser from recovery." Case Note, *Products Liability—Strict Liability in Tort as Applied to Retailers—Economic Loss*, 39 Tenn.L.Rev. 525 (1972).

In discussing the development of products liability law, the *Lonon* Court approved three sections of the *Restatement*. Though not at issue in that case, the Court approved § 402A, entitled "Special Liability of Seller of Product for Physical Harm to User or Consumer," which provides that one engaged in the business of selling products is liable for personal injury or property damage caused by a product sold in a defective condition unreasonably dangerous, even though the product was not negligently made and there was no contractual relations between the seller and the user. The *Lonon* Court noted, however, that 402A was not applicable because the tractor was not unreasonably dangerous. The great majority of American jurisdictions have adopted by judicial decision the rule set forth in § 402A. *See* 2 *American Law of Products Liability* §§ 16:8–16:9 (1987 & Supp.1991). *See also* 19 Tenn.Juris., Negligence, § 14.

The Court next approved § 402B, which imposes upon one engaged in the business of selling chattels liability for physical harm resulting from the misrepresentation to the public of a material fact justifiably relied upon by a purchaser of the product even though the misrepresentation was not made fraudulently or negligently and there was no privity of contract. The Comments to 402B include the following:

> The rule stated in this Section is one of strict liability for physical harm to the consumer, resulting from a misrepresentation of the character or quality of the chattel sold, even though the misrepresentation is an innocent one, and not made fraudulently or negligently.... A parallel rule, as to strict liability for pecuniary loss resulting from such a misrepresentation, is stated in § 552D.

It was upon this "parallel rule" in proposed § 552D that the Court in *Lonon* based liability, when it stated:

> We consider that the judgment in the present case, however, is sustainable only on the misrepresentation principle as developed, with appropriate limitations, in 2 Restatement (Second) Torts, § 402B (1965) and in a parallel rule relating to pecuniary loss.

398 S.W.2d at 250. Proposed 552D is identical to 402B, except that "physical harm" in 402B is replaced with "pecuniary loss" in 552D. The rule stated in 402B has been adopted in several jurisdictions. *See* 2 *American Law of Products Liability* § 26:1 (1987).

However, contrary to the *Lonon* Court's obvious expectation, the development of the law with regard to pecuniary damages based on innocent misrepresentation made to the public by a seller took a different turn. Proposed § 552D was not made a part of the *Restatement.* Nor has 552D been adopted by statute or court decision except in Tennessee. The explanation for its omission from the *Restatement* was set forth by the editors, as follows:

This Section does not appear in the final draft of the Second Restatement of Torts. As originally prepared by the Reporter, Dean Prosser, it read in full as follows:

**"§ 552D. Misrepresentation by Seller of Chattels to Public.**

"One engaged in the business of selling chattels, who, by advertising, labels or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for pecuniary loss caused to another by his purchase of the chattel in justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

"Comment:

"a. This Section parallels § 402B, which states the rule as to strict liability for physical harm to a user of the chattel, where the seller makes a misrepresentation to the public concerning its character or quality. This Section states the same rule, as to liability for pecuniary loss caused to one who purchases the chattel in justifiable reliance on the misrepresentation. The Comments under § 402B are applicable, so far as they are pertinent."

As thus written, the Section appeared in Council Draft Number 17 (1963), a "preliminary and private" publication, and not in any public publication, and it was never presented to the floor of the Institute for discussion or approval.

After Dean Prosser's death, the Advisory Committee to the Torts Reporter gave careful consideration to the Section and decided that any liability under it was essentially contractual rather than tortious in nature, and it voted to recommend that the blackletter be kept but that the comment be limited to the single statement: "For details of the application of the principle of this Section, see the Uniform Commercial Code." When this was reported to the Council, it voted to delete the Section entirely.

In the meantime there had been a cross-reference to the Section in the second volume of this Restatement (1965) in Comment a to § 402B, and the Section had been quoted in the Opinion in *Ford Motor Co. v. Lonon*, 217 Tenn. 400, 415, 398 S.W.2d 240, 246 (1966). References have also been made to it in a few other locations.

The action of the Institute in deleting the Section means no more than that the matter was found to be inappropriate for the Torts Restatement and should not be regarded as expressing any opinion regarding the validity or invalidity of the substance of the Section.

The rationale for not following § 552D is further discussed in 4 *American Law of Products Liability* § 60:20 (1987):

These cases [which do not allow economic damages under strict liability] often take the position that a line must be drawn between contract actions in which the basis of the plaintiff's complaint is that he failed to receive the quality of product expected; and tort actions, the basis of which is that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to person or property. The issue is whether a defect renders a product unsafe or whether it merely renders a product ineffective. The UCC is the vehicle for resolving disputes simply involving diminished commercial expectations, and this preference gains particular force where the contracting parties are businesses dealing at arms' length, rather than a manufacturer and an ultimate individual consumer. The denial of damages for economic loss applies equally to direct and consequential damages which may result from product nonperformance.

Since *Lonon*, only three reported Tennessee decisions have relied upon § 552D. In *Cooper Paintings & Coatings, Inc. v. SCM Corp.*, 62 Tenn.App. 13, 457 S.W.2d 864 (1970), the Court of Appeals upheld a jury verdict in favor of the plaintiff-contractor and against the defendant-manufacturer. Even in that case, liability was based primarily on breach of express warranty. 457 S.W.2d at 867. In *Ford Motor Company v. Taylor*, 60 Tenn.App. 271, 446 S.W.2d 521 (1969), the purchaser of a farm tractor recovered pecuniary damages against the manufacturer under § 552D and against the dealer under warranty of merchantability. In *Jasper Aviation, Inc. v. McCullum Aviation, Inc.*, 497 S.W.2d 240 (Tenn.1972), the allegation of liability under § 552D was found to be an alternate basis for finding *in personam* jurisdiction in Tennessee.

It appears that the General Assembly may have assumed that § 552D is not a part of products liability law in Tennessee. In 1978, the Tennessee Products Liability Act, T.C.A. §§ 29–28–101 to –108, was enacted. The Act, despite its name, is not a comprehensive enactment of products liability law in Tennessee, but it does define certain terms, including "product liability action." According to that definition, such actions are limited to

> actions brought for or on account of *personal injury, death or property damage* caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. It shall include, but not be limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

(Emphasis added.) By that definition, product liability actions are limited to those brought for or on account of personal injury, death, or property damage, which, of course, would include actions under

§§ 402A and 402B. However, an action for *pecuniary loss* based on innocent misrepresentation is not a products liability action as defined in that statute. Earlier, in 1972, the legislature enacted T.C.A. § 29–34–104, which abolishes the requirement of privity in "all causes of action for *personal injury or property damage* brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code." (Emphasis added.) In the enactment of this statute, the legislature apparently intended that lack of privity would bar the recovery of damages other than for personal injury and property damage in suits based on the legal theories named in the statute.

It appears that because of developments in the law since *Lonon*, the reasons that prompted the decision recognizing actions for pecuniary loss based on innocent misrepresentations made by a seller of chattels to the public concerning the character or quality of the chattel no longer exist. It also appears that the rights and liabilities of parties to actions based on diminished economic expectations can be better adjudicated on other legal theories. For these reasons, the approval in *Lonon* of the legal proposition set forth in formerly proposed § 552D of the *Restatement*, upon reconsideration by the Court, is found to be inappropriate and that rule as a cause of action is disapproved.

The judgment against Hermitage Harvestore System, Inc. and Frank Osborne is reversed, and the suit as to those parties is dismissed. The judgment against A.O. Smith Harvestore Products, Inc. is affirmed, and the case is remanded.

Costs are taxed two-thirds to A.O. Smith Harvestore Products, Inc. and one-third to Brooks Farms.

DROWOTA, O'BRIEN, DAUGHTREY, and ANDERSON, JJ., concur.