IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 16, 2021 Session

# RALPH HALL ET AL. v. JIMMY D. TABB ET AL.

**Appeal from the Circuit Court for Decatur County**
No. 17-CV-19       Charles C. McGinley, Judge

_____

### No. W2020-00740-COA-R3-CV

_____

Appellants, purchasers of a residential property, filed an action against Appellees, sellers and owners of the residential construction company that built the subject property, for violations of the Tennessee Consumer Protection Act (the "TCPA") and intentional misrepresentation for failure to disclose water damage and substandard repairs to the property. Appellants also sued a termite inspection company for negligently failing to disclose termite damage to the property. Appellants settled with the termite company for $45,000.00 but proceeded to trial against Appellees. Although the trial court found that Appellees intentionally misrepresented the condition of the property to Appellants, it found that Appellants were not "consumers" under the TCPA, and that the Act did not apply to this real estate transaction. The trial court awarded Appellants a $43,811.00 judgment against Appellees, for intentionally failing to disclose the water damage to the property, but found that Appellants had been fully compensated for their loss from the settlement with the termite company. As such, Appellants were not entitled to further compensatory damages from Appellees. We conclude the trial court erred in finding that Appellants were not consumers under the Act and that the TCPA was not applicable to this real estate transaction. We remand for a determination of whether Appellees violated the Act, and, if so, whether Appellants are entitled to an award of attorney's fees and treble damages. The trial court's order is otherwise affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and J. STEVEN STAFFORD, P.J., W.S., joined.

Dale Conder, Jr., Adam C. Crider, and Craig P. Sanders, Jackson, Tennessee, for the appellants, Ralph Hall and Carolyn Todd.

Stuart Breakstone and Adrian Vivar-Alcalde, Memphis, Tennessee, for the appellees, Jimmy Tabb and Timothy Tabb.

**OPINION**

**I. Background**

In February 2016, Appellants Ralph Hall and Carolyn Todd (together, the "Halls") purchased a home in Bath Springs, Tennessee (the "Property") from Appellees Jimmy Tabb and Timothy Tabb (together, the "Tabbs"). Appellees are brothers and co-owners of TabbCo, which buys, constructs, and sells residential real estate. The Tabbs purchased the plot of land on which the Property sits in 2004, and construction of the house took approximately ten years. After completing the exterior construction, but before beginning the interior construction, the Tabbs used the Property as a "hunting tent" and allowed subcontractors to sleep there while working on projects in the area. While the Property was under construction, Timothy Tabb discovered a "spongy spot" on the floor near the back door and determined that water was leaking in that area. Mr. Tabb instructed his subcontractors to replace the subfloor where the spongy spot was located and provided plywood for the replacement. Mr. Tabb did not go into the crawl space to inspect the floor joists under this area of the house, nor did he instruct his subcontractors to do so. The subcontractors performed a quick and substandard repair to the joists and subfloor. Between late 2013 and early 2014, before finalizing the interior of the Property's construction, Timothy Tabb hired Dale Brasher to perform an initial termite treatment on the Property. Construction of the Property was finalized in late 2014 or early 2015.

In August 2015, the Tabbs executed a Tennessee Residential Property Disclosure form (the "Disclosure form") for the Property, and Timothy Tabb executed a Mold/Mildew Disclosure and Release (the "Mold/Mildew form"). The Disclosure form, discussed *infra*, provided, in pertinent part, that: (1) the Tabbs were not aware of any defects in the Property's flooring or foundation; (2) the Tabbs did not make any repairs to the Property; and (3) the Tabbs were not aware of any past or present interior water intrusions from outside the home. The Mold/Mildew form, also discussed *infra*, provided, in pertinent part, that the Tabbs were "not aware of mold/mildew, fungus growth and/or evidence, such as smells or water damage/leaks/dampness that may suggest that mold, mildew or fungus may exist on the [P]roperty." Importantly, the Tabbs failed to disclose the previous water leak near the back door and the resulting repairs to the subfloor. Although Mr. Hall toured the Property twice before purchasing it, the Halls never obtained a professional inspection. Mr. Hall signed the Disclosure form as the buyer in December 2015, prior to closing.

On January 12, 2016, Timothy Tabb engaged Mr. Brasher to perform the termite inspection necessary for closing. Mr. Brasher's report provided that there was "no visible evidence of wood destroying organisms . . . observed." This letter was provided to the

Halls at closing. The Halls relied on Mr. Brasher's termite letter, the Disclosure form, and the Mold/Mildew form in deciding to purchase the Property.

Three months after moving into the Property, the Halls contracted with Terminix for termite treatment. Upon inspection and treatment, the Terminix employee discovered rotten wood and considerable damage to the joists and subflooring at the back of the house due to mold contamination and termites. As a result, the Halls paid Terminix $6,272.00 to remove the mold and $894.00 for the termite treatment. The Halls also hired E&T Contracting ("E&T") to repair the joists and subflooring. Because the damage to the Property was so extensive, E&T had to remove and replace the entire flooring system in the back of the house. During these repairs, the Halls were forced to move out of the Property. The Halls paid E&T over $35,000.00 for their services.

On June 13, 2017, the Halls filed a complaint in the Decatur County Circuit Court ("trial court") against Dale Brasher d/b/a Brashers Termite Control and the Tabbs, alleging, in pertinent part, that: (1) the Tabbs intentionally and fraudulently failed to disclose improper repairs made to the Property; (2) Mr. Brasher negligently issued the termite letter without inspecting the Property; and (3) the Tabbs knowingly, intentionally, fraudulently, and maliciously misled the Halls as to the condition of the Property when they failed to disclose water damage and substandard repairs in violation of the Tennessee Consumer Protection Act (the "TCPA" or the "Act"). On August 4, 2017, Mr. Brasher filed an answer admitting that an employee erroneously inspected a neighboring property for termites rather than the Property. On September 6, 2017, the Tabbs filed an answer denying any intentional fraud, misrepresentation, or violation of the TCPA; the Tabbs also raised several affirmative defenses. The Halls subsequently settled with Mr. Brasher for $45,000.00, and, on May 22, 2018, the trial court entered an agreed order dismissing him from the lawsuit with prejudice.

Although the trial court ordered the remaining parties to mediation, it was unsuccessful. Accordingly, on March 6, 2020, the trial court conducted a bench trial. By order of April 28, 2020,[1] the trial court, in pertinent part: (1) denied the Halls' TCPA claim; (2) granted the Halls' intentional misrepresentation claim; (3) awarded the Halls $7,166.00 for Terminix's encapsulation and treatment of the Property, $35,800.00 for E&T's repairs, $725.00 in moving expenses, and $120.00 in storage fees, for a total of $43,811.00 in damages against the Tabbs; and (4) concluded that the Halls could not collect their judgment against the Tabbs because they had been made whole through their settlement with Mr. Brasher. Both parties appeal.

---

[1] After realizing the April 28, 2020 order was not compliant with Rule 54, the trial court entered an identical order on September 28, 2020 that complied with same.

## II. Issues

As stated in their brief, the Halls raise three issues for review:

1. The Tennessee Consumer Protection Act applies to real estate transactions where the seller is a builder who sells a house as part of trade or commerce. Here, Jimmy and Timothy Tabb[] are builders who built and sold a house to Mr. and Mrs. Hall. Did the trial court err in holding that the Act does not apply because Mr. and Mrs. Hall are not consumers?

2. The Tennessee Consumer Protection Act allows for recovery of treble damages if the trial court finds that the defendants' use of unfair or deceptive acts was a willful or knowing violation. Here, the trial court found that Jimmy and Timothy Tabb[] intentionally used unfair or deceptive acts in dealing with Mr. and Mrs. Hall. Should this Court remand the case for the trial court to determine if it should treble the Halls' damages?

3. Joint-and-several liability survived in limited circumstances Tennessee's adoption of comparative fault. These circumstances are limited to vicarious-liability situations. Did the trial court err in applying joint-and-several liability to determine that the Tabbs did not owe Mr. and Mrs. Hall anything?

In the posture of Appellees, the Tabbs raise four issues for review:

1. The Trial Court made no finding that the Defendants sold the subject real property as part of trade or commerce. Did the Trial Court err in finding that the Tennessee Consumer Protection Act . . . did not apply to a real estate transaction where the sellers sold a home in a casual and isolated sale? Alternatively, in the event the TCPA applies, are the Defendants subject to liability for their failure to disclose non-apparent defects when Defendants lacked actual knowledge of said defects?

2. Did the Defendants' alleged nondisclosure meet the elements of intentional misrepresentation, despite Defendants' good faith interpretation of the disclosure form and Plaintiffs' failure to exercise due diligence?

3. Does joint and several liability apply to the injuries caused by a dismissed co-defendant whose negligence foreseeably caused Defendant's allegedly intentional acts?

4. Did the trial court commit revers[i]ble error after Plaintiffs failed to distinguish the damages that were proximately caused by Defendants['] intentional acts? Alternatively, should this cause be remanded to the trial court to determine the apportionment of liability between all culpable persons?

### III.  Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise."  ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)).  The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness."  ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

### IV. Analysis

### A.  Tennessee Consumer Protection Act

The TCPA was enacted, in pertinent part, to "protect consumers . . . from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce."  Tenn. Code Ann. § 47-18-102(2).  To trigger application of the TCPA to a consumer transaction, a plaintiff must demonstrate two elements: (1) the plaintiff was a "consumer;" and (2) the defendant was engaged in "trade" or "commerce" when the alleged violation occurred.  Tenn. Code Ann. § 47-18-102(2).  Here, the trial court found that: (1) the Halls were not "consumers" under the Act; and (2) the Act did not apply to "real estate matters such as this one."  This was error.  As an initial matter, we conclude that the Halls were "consumers" under the Act.  The Act broadly defines a consumer to include any natural person who purchases real property.  Tenn. Code Ann. § 47-18-103(2).[2] *See also* ***Fayne v. Vincent***, 301 S.W.3d 162, 172-73 (Tenn. 2009); ***Ganzevoort v. Russell***, 949 S.W.2d 293, 297 (Tenn. 1997).  As purchasers of real property from the Tabbs, the Halls meet the definition of "consumers" under the Act.  We now turn to the question of whether the Tabbs were engaged in "trade" or "commerce" when they sold the Property to the Halls.

As the Tennessee Supreme Court has explained,

[t]he Act defines "trade," "commerce," or "consumer transaction" as the "advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated."  Tenn. Code Ann. § 47-18-103([19]).  Relying in part on the Act's purpose of "maintaining ethical standards of dealing *between persons engaged in business* and the consuming public," Tenn. Code Ann. 47-18-102(4) (emphasis added), courts have limited the Act's application to "transactions between businesses and consumers and not to casual, non-commercial

---

[2] In this Opinion, we cite the version of the Tennessee Code Annotated that was in effect at the time the Halls filed their complaint.

transactions between two individuals." ***White v. Eastland***, No. 01A01-9009-CV-00329, 1991 WL 149735, at \*3 (Tenn. Ct. App. Aug. 9, 1991).

***Fayne***, 301 S.W.3d at 173. Whether a person is engaged in business ("trade" or "commerce") "is a fact-intensive query that requires [] courts to consider the totality of the circumstances." ***Id.*** at 174. The following factors guide courts in making this determination: (1) the nature of the transaction; (2) the character of the parties, taking into account their occupations and sources of income; (3) the activities the parties performed as part of the transaction and their role in the transaction; (4) the frequency with which the seller has engaged in similar transactions; and (5) whether the motivation for the transaction was for business or personal reasons. ***Id.*** at 174-75.

Concerning real property transactions, the Act applies when a person, who is regularly engaged in the business of real estate, sells real property in the regular course of the real estate trade. *See **id.*** at 175-76 (holding that the Act applied to a builder, developer, and realtor engaged in the real estate trade); ***Ganzevoort***, 949 S.W.2d at 297 (holding that the Act applied to a realtor engaged in the real estate trade). However, because the TCPA is limited to "transactions between *businesses* and consumers," ***Fayne***, 301 S.W.3d at 173 (emphasis added) (citing ***White***, 1991 WL 149735, at \*3), it does not apply when a seller, who is not in the business of selling real property, engages in a "casual or isolated sale" of his or her home. ***Ganzevoort***, 949 S.W.2d at 298. "[A] casual sale or transaction is an occasional and isolated sale or transaction by a person who does not hold himself or herself out as being regularly engaged in business or commerce involving the goods, property, or services involved in the sale or transaction." ***Fayne***, 301 S.W.3d at 173. We note that the "casual or isolated" sale exception may apply even if the seller of real property is an individual who is generally in the business of selling real property (e.g. a developer, contractor, or realtor), *if* those individuals are "selling their personal residence in a casual or isolated sale and . . . are not performing or providing professional services to facilitate or finalize a sale." ***Id.*** at 174. As such, the question here is whether the Tabbs were regularly engaged in the business of constructing and selling residential real estate when they sold the Property to the Halls or whether the sale of the Property was merely a casual or isolated sale of the Tabbs' personal residence.

Although the Tabbs argue that this was a "casual or isolated" sale of a personal residence, the facts of this case, when viewed in the aggregate, support the conclusion that the Tabbs were not acting in their personal capacity when they sold the Property to the Halls. *See **id.*** at 175. According to the record, the Tabbs have been in the residential construction business for over 30 years and have built and sold over 100 homes during this time. Jimmy Tabb testified that the Tabbs' corporation, TabbCo, was formed to hold properties the Tabbs bought and built in Decatur County, where the Property is located. Mr. Tabb also testified that TabbCo only held business properties and never held the Tabbs' personal properties. Although TabbCo originally purchased the Property, Jimmy Tabb admitted that later it was transferred to him personally because Timothy Tabb was involved

in a bankruptcy. The record demonstrates that the Tabbs completed most of the construction on the Property and hired subcontractors only for the brickwork, plumbing, HVAC, electrical, and sheetrock. The record also shows that the Halls, as consumers, sought to purchase the newly constructed residential property from the Tabbs, who were licensed contractors, as part of a standard residential real estate transaction: the parties used a real estate agent, executed a Disclosure Form, and signed a warranty deed.

Although the Tabbs attempt to distinguish the Property from other properties they have built over the years, it is a distinction without a difference. While construction on the Property lasted longer than other properties the Tabbs built, the Tabbs clearly built and sold this Property for business purposes, not personal reasons. Nonetheless, the Tabbs argue that, because they occasionally used the Property as a "hunting tent" and allowed subcontractors to stay at the Property during its construction, it qualifies as a personal residence. We disagree. The record shows that the Tabbs rarely used the Property for their personal benefit and spent only a token amount of time there. At trial, Timothy Tabb testified that, during the 10 years the Property was being constructed, he used the Property as a "hunting tent" only 35 times; Jimmy Tabb testified that he stayed at the Property only 10 nights. Neither of the Tabbs ever resided in the Property after construction was complete. From the totality of the circumstances and the record as a whole, we conclude that the evidence preponderates against a finding that the Property was the brothers' "personal residence."

However, even assuming, *arguendo*, that the Property was the Tabbs' personal residence, this fact alone does not shield them from liability under the TCPA. "[D]evelopers, contractors, and realtors cannot insulate themselves from liability under the [Act] simply by owning and briefly residing in a house before they offer it for sale as their personal residence." *Id.* at 174. However, it appears from their arguments that this is exactly what the Tabbs are attempting to do. The undisputed facts provide a sufficient evidentiary basis that the Tabbs were acting in a business capacity during the sale of the Property to the Halls and were not simply the sellers of a personal residence. *Id.* at 176. Accordingly, we reverse the trial court's holding that the TCPA does not apply to the sale of this Property. Because we conclude that the TCPA applies, the case is remanded for determination of whether the Tabbs' conduct constituted a violation of the Act, and, if so, for a determination of whether the Halls are entitled to attorney's fees and treble damages under the Act. Upon remand, the trial court may, in its discretion, hear and consider additional proof.

### B. Intentional Misrepresentation

Although the trial court denied the Halls' TCPA claim, it granted their claim for intentional misrepresentation against the Tabbs. The Tabbs appeal this ruling. The tort of intentional misrepresentation is also referred to as "fraudulent misrepresentation" or "fraud" and is the successor to Tennessee's common law action for deceit. ***Hodge v. Craig***,

382 S.W.3d 325, 342 (Tenn. 2012) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999); *First Nat'l Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991)).  To recover for intentional misrepresentation, a plaintiff must prove that: (1) the defendant made a representation of a present or past fact; (2) the representation was false when it was made; (3) the representation involved a material fact; (4) the defendant either knew that the representation was false or did not believe it to be true or the defendant made the representation recklessly without knowing whether it was true or false; (5) the plaintiff did not know the representation was false when made and was justified in relying on the truth of the representation; and (6) the plaintiff sustained damages as a result of the representation.  *Hodge*, 382 S.W.3d at 343 (internal citations omitted).

Intentional misrepresentation or fraud claims are inherently fact driven.  *See Maddox v. Olshan Found. Repair & Waterproofing Co. of Nashville, L.P.*, No. M2018-00892-COA-R3-CV, 2019 WL 4464816, at *17 (Tenn. Ct. App. Sept. 18, 2019) (citing *Vic Davis Constr., Inc. v. Lauren Engineers & Constructors, Inc.*, No. E2017-00844-COA-R3-CV, 2019 WL 1300935, at *6 (Tenn. Ct. App. Mar. 20, 2019); *Ray v. Williams*, No. W2000-03000-COA-R3-CV, 2002 WL 974671, at *3 (Tenn. Ct. App. May 9, 2002)).  Accordingly, we defer to the trial court's findings of facts concerning the Tabbs' alleged intentional misrepresentation to the Halls unless the evidence preponderates otherwise.  *Bowden*, 27 S.W.3d at 916 (citing Tenn. R. App. P. 13(d)).  In granting the Halls' claim for intentional misrepresentation, the trial court found that

> the [Tabbs'] misrepresentations involved failing to disclose a "quick fix" and non-proper fix to [the Property], [that the Tabbs] were deceptive and that they had an affirmative duty to disclose the same on the [Disclosure Form].  The [trial court] found further that the [Halls] relied on the misrepresentations of [the Tabbs] to their detriment and that they suffered damages based upon these misrepresentations.  The [trial court] found that the [Halls] had the right to rely on the representations of the [Disclosure Form] without having obtained an inspection on the Property.

The trial court also found that the Halls sustained damages in the amount of $43,811.00 and awarded them a judgment against the Tabbs for this amount.

According to the record, the Tabbs not only failed to disclose the "quick fix" of the joists and subfloor, but also failed to disclose the water leak and water damage that precipitated the need for the repair.  In both the Disclosure form and the Mold/Mildew form, which were entered as exhibits at trial, the Tabbs represented that they: (1) were unaware of any defects or malfunctions involving the floors or the foundation; (2) never made any repairs to the Property; (3) were unaware of any past or present interior water intrusions into the home from outside the home; and (4) were unaware of any mold/mildew or evidence of water damage/leaks/dampness that might suggest mold or mildew on the Property.  Timothy Tabb's testimony indicates that these representations were false when

- 8 -

made. Specifically, Mr. Tabb testified that, prior to selling the Property to the Halls, he discovered a "spongy spot" on the floor near the back door, which he concluded was the result of water damage to the floor and subfloor. Mr. Tabb instructed his subcontractors to replace the back door and some of the subflooring, and he provided the subcontractors with both a replacement door and plywood to repair the damage. Accordingly, the record demonstrates that, not only were the Tabbs aware of the water leak and damage to the floors and foundation, but they also attempted to repair the damage. Thus, the Tabbs' representations on the Disclosure and Mold/Mildew forms, discussed *supra*, were false when made and were made either intentionally, or, at the very least, recklessly. Regardless, the evidence supports the trial court's finding that the Tabbs were deceptive in their representations to the Halls concerning the condition of the Property.[3]

The record also shows that the Halls were unaware of the true condition of the Property and relied on the Tabbs' false representations to their detriment in deciding to purchase the Property. At trial, Mr. Hall testified that he was not made aware of any water intrusions, water damage, or prior repairs to the Property; however, he further stated that, if he had known about the water damage, he would not have purchased the Property. Although it would have been prudent for the Halls to obtain an independent inspection, we agree with the trial court that it was reasonable for the Halls to rely on the Tabbs' representations because the Tabbs built the Property and would likely have been aware of any issues with it.

Relying on the false representations from the Tabbs, the Halls unknowingly purchased a property with significant structural damage. At trial, Edward Jones, owner of E&T contractors, testified that the Property suffered major damage from both mold/water and a termite infestation. Specifically, Mr. Jones testified that: (1) the joists and sills underneath the rear of the house were damp or wet; (2) the wood underneath the rear of the house was rotten and deteriorated; (3) the damage was due to both mold/water and termites; and (4) water damage caused structural damage to the Property. Because the wood underneath the rear of the house had rotted, to effectuate the necessary and proper repairs, Mr. Jones and his crew had to remove the entire flooring system in the rear of the house.

---

[3] Although not specifically stated, we glean from the trial court's final order that it found the Tabbs' representations included "material facts." We agree. In pertinent part, a fact is material if it is one that "a reasonable person would attach importance to . . . in determining his or her choice of action in the transaction in question." *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003) (finding the existence of prior termite damage to be a material fact in a transaction for real property) (quoting *Lowe v. Gulf Coast Dev., Inc.*, No. 01-A-01-9010-CH-00374, 1991 WL 220576, at *8 (Tenn. Ct. App. Nov.1, 1991) (no perm. app. filed) (quoting Restatement (Second) of Torts § 538(2) (1976))). Here, the Tabbs represented to the Halls that the Property had never suffered water damage or undergone repairs, facts to which, we conclude, a reasonable person would attach importance in determining whether to proceed with a real estate transaction. Indeed, the record shows that Mr. Hall found these facts important as evidenced by his testimony that he would not have purchased the Property had he been made aware of such information. Accordingly, we conclude the Tabbs' representations to the Halls that the Property never suffered water damage or underwent repairs were material.

Unable to remain in a home under construction and without proper flooring, the Halls were compelled to vacate their home for three months while the repairs were made. The record shows that the cost of the repairs, as well as incidental expenses incurred from moving and storage fees, totaled well over $40,000.00. From the totality of the circumstances and for the reasons discussed above, we conclude that the Halls successfully proved each element of their intentional misrepresentation claim.

## C. Compensatory Damages

As discussed, *supra*, the trial court awarded the Halls $43,811.00 in compensatory damages on their intentional misrepresentation claim. However, the trial court also found that the Halls were fully compensated for their loss through the $45,000.00 settlement with Mr. Brasher. Accordingly, the trial court held that the Halls could not recover the same damages from the Tabbs. We agree.

Importantly, the record shows that the harm caused by the mold/water, discussed *supra*, was intertwined with and indistinguishable from the harm caused by the termites. Indeed, the Halls' expert witness, Mr. Jones, testified that the majority of damage to the Property's joists and subflooring was the result of *both* mold/water *and* termites. Therefore, although the harm originated from two different sources, i.e. mold/water and termites, there was only one injury/loss, i.e. the damage to the flooring system. It is well settled that "duplicative recovery for a single injury is invalid," 22 Am. Jur. 2d Damages § 32, and courts must be careful to "avoid double recoveries by allowing the same damage twice under different designations." ***Ford Motor Co. v. Taylor***, 446 S.W.2d 521, 530 (Tenn. Ct. App. 1969); *see also **Allied Sound, Inc. v. Neely***, 909 S.W.2d 815, 821 (Tenn. Ct. App. 1995). To allow the Halls to recover the full measure of their compensatory damages from the Tabbs and Mr. Brasher would result in a double recovery for their single injury/loss in violation of the doctrine precluding double recovery. Because the trial court did not err in finding that the Halls could not recover double compensatory damages from the Tabbs and Mr. Brasher, it is unnecessary to discuss joint and several liability and comparative fault, and we pretermit these issues.

## V. Conclusion

For the foregoing reasons, we: (1) reverse the trial court's finding that the Halls are not consumers under the TCPA, and that the Act does not apply to the real estate transaction between the Halls and the Tabbs; (2) affirm the trial court's finding that the Tabbs intentionally misrepresented material facts regarding the Property to the Halls; and (3) affirm the trial court's finding that the Halls could not recover compensatory damages from the Tabbs because they were fully compensated for their injuries through the $45,000.00 settlement with Mr. Brasher. The case is remanded for determination of whether the Tabbs' conduct constituted a violation of the Act, and if so, for determination of whether the Halls are entitled to an award of attorney's fees and treble damages, and for such further

- 10 -

proceedings as may be necessary and are consistent with the opinion. Costs of the appeal are assessed against Appellees, Jimmy and Timothy Tabb, for all of which execution may issue if necessary.

                                   s/ Kenny Armstrong
                              KENNY ARMSTRONG, JUDGE